[No. H021621. Sixth Dist. Dec. 21, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL GEORGE ZICHWIC, Defendant and Appellant.

## COUNSEL

Andrew Parnes for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—Following the denial of his suppression motion, defendant Daniel George Zichwic pled no contest to a charge of second degree burglary of a Pacific Gas & Electric Company (PG&E) utility van which occurred on November 14, 1998. (Pen. Code, §§ 459-460.)[1] Other charges of petty theft of tools with a specified prior (§ 666) and possession of stolen tools (§ 496) were dismissed. Defendant also admitted the following criminal history. Defendant, born in April 1964, was convicted of one residential burglary in 1984, two residential burglaries in 1985, and two residential burglaries in 1992.

After denying defendant's motion to strike his five prior strike convictions of residential burglary, the trial court sentenced defendant to an indeterminate term of life in prison with a minimum term of 25 years under the "Three Strikes" law. (§ 1170.12, subd. (c)(2).)

On appeal defendant contends that the trial court erred in denying his suppression motion and that the trial court misunderstood its discretion to strike his strikes. For the reasons stated below, we will affirm the judgment.

### 1. SUPPRESSION MOTION

On appeal defendant contends that the trial court erred in denying his motion to suppress evidence of his location obtained from installation of an electronic tracking device on the undercarriage of his truck.

### A. *The suppression hearing*

The motion to suppress was based on evidence presented at a special suppression hearing, which we summarize.

On July 24, 1996, defendant was released from prison and placed on parole for three years, subject to the following condition among others. "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer."

---

[1]Unspecified section references are to the Penal Code.

While defendant was on parole, there was a construction site burglary near his Mountain View residence. Mountain View Police Detective Jeffrey Sato was involved in the investigation of this burglary. Defendant was identified as leaving the scene of the crime. Sato was aware that defendant had prior convictions of "thefts and drug related offenses." In 1997 defendant was arrested and prosecuted for this burglary. Ultimately a jury acquitted him. Subsequent to this acquittal defendant was released from custody on September 17, 1998.

After defendant's release from custody, Detective Sato noticed an increase in Mountain View construction site burglaries from two to five a month. Bolt cutters were taken in one theft and bolt cutters were used in later thefts. Six burglaries occurred within a mile of defendant's residence in Mountain View. Three occurred on the same street. Detective Sato acknowledged on cross-examination that one burglary on defendant's street occurred while defendant was still in custody. Thefts from PG&E yards occurred on October 27, 29, the weekend of October 30, and November 2, 1998. According to Detective Sato, the average burglar would not know what to do with specialized construction tools.

Mountain View police officers suspected defendant's involvement in the commercial burglaries. Detective Visalden asked for and obtained authorization from defendant's parole officer to conduct electronic surveillance of defendant. Detective Visalden did not testify at the suppression hearing and defendant's parole officer could not recall when he gave this authorization.

Around 11:00 p.m. on November 13, 1998, Detective Visalden and two other officers in plain clothes and an unmarked car went to defendant's residence at 1958 Rock Street in Mountain View. Los Altos Police Officer Mark Laranjo watched as Detective Visalden installed an electronic monitoring device underneath defendant's truck.

From photographs of defendant's residence that were introduced into evidence and Officer Laranjo's testimony, it appears that defendant lived in the second residential unit on the left-hand side of a multi-unit single-story complex. There is a fence around the backyards of the residential units, but not the front yards. All the units are accessed by a wide driveway leading to a private street from the public street. The private street is posted near the entrance to afford "tenant parking only." To the left of defendant's residence is a covered carport area. To the left of defendant's carport is a neighbor's carport. Both carports share one driveway. Most of the back of defendant's carport has been converted into an enclosed storage shed with a door. One photo shows that the remaining covered area is about large enough to shelter

a motor scooter that was parked there. From the photos it is apparent that a pickup truck could not fit entirely under the covered area. In front of defendant's residence is a lawn about the length of a pickup truck. The front door faces the private street. A sidewalk extends parallel to the front of the house from the front door to the carport's driveway. To reach defendant's front door a person must either cross the lawn from the private street or walk up the driveway and the sidewalk.

On the night of November 13, 1998, defendant's pickup was parked in the driveway to the left of his residence. Officer Laranjo could not recall how close to the covered area the truck was parked. Detective Visalden walked up to the truck, got underneath it, and apparently attached the electronic monitoring device to the undercarriage. Officer Laranjo did not see exactly where Detective Visalden put the device. He did not see Detective Visalden open a door.

Around 12:30 a.m. on November 14, 1998, both the tracking device and Detective Visalden, who was conducting visual surveillance, reported that defendant's truck was leaving his residence. Detective Visalden followed defendant's truck until he lost sight of it. The monitoring device allowed the police to track the truck to the front of a PG&E yard at 714 Yuba Drive in Mountain View. Officers who responded to the scene heard banging noises in the PG&E yard as they stood at the side of the road. They saw defendant run along the fence to his truck and throw something into the back of the truck. Defendant was arrested at 1:57 a.m. outside his truck. Tools with PG&E serial numbers were found in the bed of his truck.

### B. *Trial court ruling*

After the suppression hearing, the court denied defendant's motion to suppress, explaining: "I think given the fact Mr. Zichwic knew he was on parole, he was subject to search, I don't think he enjoyed the same privileges against reasonable influence [*sic*] into his life that a citizen would . . . ." The beeper did not obtain private information, just defendant's movements. "I think the officers through their training and their research and their records that they had I think their interpretation[s] of Mr. Zichwic as a possible suspect were well drawn, were logical, reasonable, were not reaching or [were] more than simply a hunch . . . ."

### C. *Validity of the ruling*

"In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's

ruling, deferring to those express or implied findings of fact supported by substantial evidence. [Citations.] We independently review the trial court's application of the law to the facts." (*People v. Jenkins* (2000) 22 Cal.4th 900, 969 [95 Cal.Rptr.2d 377, 997 P.2d 1044].) In conducting our independent review, we are concerned with the correctness of the ruling, not the trial court's reasoning. (*People v. Clark* (1993) 5 Cal.4th 950, 993, fn. 19 [22 Cal.Rptr.2d 689, 857 P.2d 1099]; *People v. Ellis* (1993) 14 Cal.App.4th 1198, 1201 [18 Cal.Rptr.2d 284].)

 When the police attached the electronic monitor to the undercarriage of defendant's truck, defendant was on parole and subject to a standard search condition which authorized a warrantless search of defendant, his residence, and his property. Defendant contends that this police action amounted to a search that was arbitrary and capricious in violation of *People v. Reyes* (1998) 19 Cal.4th 743 [80 Cal.Rptr.2d 734, 968 P.2d 445] (*Reyes*). Defendant alternatively contends that *Reyes* "is not controlling because it does not comport with federal constitutional precedent."

In *Reyes*, the California Supreme Court overruled *People v. Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] and held "that, even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate." ' " (*Reyes, supra,* 19 Cal.4th at p. 754.) The court adopted the reasoning it employed in *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519], which involved juvenile probation conditions. Those who commit crimes demonstrate a need for governmental supervision and thereby forfeit some freedom. (*Reyes, supra,* 19 Cal.4th at p. 752.) A warrantless search condition is a reasonable term of parole supervision, as it promotes the parolee's rehabilitation and protects the public against criminal behavior. (*Ibid.*) The imposition of a search condition diminishes a parolee's reasonable expectation of privacy. (*Id.* at pp. 752-753.) "The threat of a suspicionless search is fully consistent with the deterrent purposes of the search condition." (*Id.* at p. 752.)

"Such a search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious, or harassing." (*Reyes, supra,* 19 Cal.4th at p. 752.) A search is arbitrary "when the motivation for the search is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee." (*Id.* at p. 754.) It may be unreasonable " 'if made too often, or at an unreasonable hour, or if unreasonably prolonged.' " (*Id.* at p. 753.)

Defendant contends that attaching a monitoring device to his truck on November 13, 1998, was arbitrary and capricious. We disagree. Before this

occurred, Mountain View Detective Sato was aware of the following. Defendant has a history of theft and drug-related convictions. Defendant was identified as involved in a 1997 burglary of a Mountain View construction site. He was prosecuted for this offense and ultimately acquitted. After he was released from custody on September 17, 1998, there was a dramatic increase in commercial burglaries near his Mountain View residence. Suspecting defendant's involvement, the police obtained defendant's parole officer's authorization to conduct electronic surveillance. On the record before us, we conclude that the police conduct in this case was not arbitrary or capricious.

Defendant also argues that *Reyes* is not controlling because it does not comport with federal constitutional precedent. Defendant relies primarily on Ninth Circuit Court of Appeals decisions (e.g., *U.S. v. Ooley* (9th Cir. 1997) 116 F.3d 370, 372) including *U.S. v. Knights* (9th Cir. 2000) 219 F.3d 1138, 1143-1144, which was recently reversed by the United States Supreme Court. (*United States v. Knights* (2001) 534 U.S. 112 [122 S.Ct. 587, 151 L.Ed.2d 497] (*Knights*).) Knights and a friend were suspected of involvement in 30 incidents of vandalizing and burning PG&E property in Napa County. A detective saw Knight's friend leave Knight's apartment around 3:00 a.m. carrying what appeared to be pipe bombs. In the back of the friend's truck the detective saw PG&E padlocks and various explosive materials. Based on these observations, the officer searched Knight's apartment pursuant to a probation search condition.

The Ninth Circuit concluded the search was invalid because it was motivated by " 'investigatory' " and not " 'probationary' " purposes. (*Knights, supra,* 534 U.S. at p. 116 [122 S.Ct. at p. 587].) The United States Supreme Court rejected this distinction and held the probation search to have been justified by a reasonable suspicion that the probationer was engaged in criminal activity. The court noted that because there was reasonable suspicion, "We do not decide whether the probation condition so diminished, or completely eliminated, Knight's reasonable expectation of privacy (or constituted consent . . .) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." (*Id.* at p. 120 [122 S.Ct. at p. 592, fn. 6].)

*Knights* did not cite *Reyes* and did not reach the issue decided in *Reyes,* that a parole search does not require a particularized suspicion. ■ As an intermediate state appellate court, we, of course, are bound by decisions of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People v. Superior Court (Persons)* (1976) 56 Cal.App.3d 191, 194 [128 Cal.Rptr.

314].) We conclude, pursuant to the holding in *Reyes*, if we assume that attaching an electronic tracking device to the undercarriage of defendant's truck constituted a search, it was authorized by defendant's parole search condition.

 If defendant was not subject to a parole search condition, we would conclude, on the record before us, that installing an electronic tracking device on the undercarriage of defendant's truck did not amount to a search within the meaning of the Fourth Amendment. "A search occurs when 'an expectation of privacy that society is prepared to consider reasonable is infringed.' (*United States* v. *Jacobsen* [(1984)] 466 U. S. 109, 113 [104 S.Ct. 1652, 1661, 80 L.Ed.2d 85].)" (*Maryland v. Macon* (1985) 472 U.S. 463, 469 [105 S.Ct. 2778, 2782, 86 L.Ed.2d 370].) "A seizure occurs when 'there is some meaningful interference with an individual's possessory interests' in the property seized. (*United States v. Jacobsen*, *supra*, 466 U.S. at 113.)" (*Maryland v. Macon*, *supra*, 472 U.S. at p. 469 [105 S.Ct. at p. 2782].)

 Defendant contends that the police searched his property when "they trespassed into the curtilage of his home." The concept of curtilage has been employed to identify what property is protected by the Fourth Amendment. In *Oliver v. United States* (1984) 466 U.S. 170 [104 S.Ct. 1735, 80 L.Ed.2d 214], the United States Supreme Court "recognized that the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." (*United States v. Dunn* (1987) 480 U.S. 294, 300 [107 S.Ct. 1134, 1139, 94 L.Ed.2d 326].) *Dunn* articulated several factors relevant to determining whether a location is within the curtilage, including "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." (*Id.* at p. 301 [107 S.Ct. at p. 1139.].)

However, the law is clear that not every technical trespass onto the curtilage amounts to a search. Just like any other visitor to a residence, a police officer is entitled to walk onto parts of the curtilage that are not fenced off. "Whether a driveway is protected from entry by police officers depends on the circumstances. The fact that a driveway is within the curtilage of a house is not determinative if its accessibility and visibility from a public highway rule out any reasonable expectation of privacy. (*United States v. Magana* (9th Cir. 1975) 512 F.2d 1169, 1171.)" (*United States v. Smith* (6th Cir. 1986) 783 F.2d 648, 651.)

*People v. Edelbacher* (1989) 47 Cal.3d 983 [254 Cal.Rptr. 586, 766 P.2d 1] (*Edelbacher*) explained: "An officer's observation with the naked eye from a vantage point open to the public is ordinarily not regarded as a search within the meaning of the constitutional proscription against warrantless searches. [Citations.] In determining whether a warrantless government surveillance is proscribed by the Fourth Amendment, the inquiry is 'whether the government intruded unreasonably on an expectation of privacy which society is prepared to recognize as valid.' [Citations.] The determining factor is whether common habits in the use of property result in a reasonable expectation of privacy in a given situation. [Citations.] 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' (*Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507].)" (*Id.* at p. 1015; cf. *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].)

In *Edelbacher*, an officer saw shoe tracks "while he was looking for defendant at the residences of defendant and his parents." (*Edelbacher*, *supra*, 47 Cal.3d at p. 1015.) The California Supreme Court concluded that it was not a search for an officer to see shoe tracks while walking through a front yard, on a driveway, or on a front porch when the officer took "the normal route used by visitors approaching the front doors of the residences and there is no indication of solid fencing or visible efforts to establish a zone of privacy." (*Ibid.*) ▮ In other words, it is not a Fourth Amendment search for a police officer to see an item that is exposed to public view, though the item is within the curtilage of a residence.

It is also settled that it is not a search to view either the exterior of a vehicle or what is exposed to the public inside the vehicle, though it is a search for an officer to physically enter the vehicle. (*People v. Gale* (1973) 9 Cal.3d 788, 794-795 [108 Cal.Rptr. 852, 511 P.2d 1204]; *New York v. Class* (1986) 475 U.S. 106, 114 [106 S.Ct. 960, 966, 89 L.Ed.2d 81]; see *Texas v. Brown* (1983) 460 U.S. 730, 739-740 [103 S.Ct. 1535, 1542, 75 L.Ed.2d 502].)

▮ We find no California state precedent on whether it is a search to install an electronic tracking device on the undercarriage of a vehicle. In *People v. Smith* (1977) 67 Cal.App.3d 638 [136 Cal.Rptr. 764], on which defendant relies, the court essentially concluded that it was a search for a police agent to unlock and enter the cabin of a rented airplane in order to install a transponder for the purpose of tracking the airplane's movements. (*Id.* at p. 647.) In *United States v. Butts* (5th Cir. 1983) 710 F.2d 1139, the court concluded that "installation of an electronic tracking device in the

interior of a vehicle or conveyance is a 'search' within the meaning of the fourth amendment." (*Id.* at p. 1147.) But in our case the officer did not intrude through a locked or closed door in order to install the tracking device. Instead he reached underneath a truck that was parked in a driveway in a multi-unit complex.

Federal circuit courts disagree about whether the installation of a monitoring device is a search. The Fifth Circuit Court of Appeals has concluded that "installation of an electronic tracking device on a motor vehicle is a search within the meaning of the Fourth Amendment." (*United States v. Holmes* (5th Cir. 1975) 521 F.2d 859, 864; cf. *United States v. Holmes* (5th Cir. 1976) 537 F.2d 227, 227-228.) In that case, the police attached a tracking device to the undercarriage of the defendant's vehicle while parked in a public lot. The court believed "[a] person has a right to expect that when he drives his car into the street, the police will not attach an electronic surveillance device to his car in order to track him." (*Holmes, supra,* 521 F.2d 859, 866.) On the other hand, the Ninth Circuit has concluded: "attachment of an electronic location device to a vehicle moving about on public thoroughfares (or through the public airspace) does not infringe upon a reasonable expectation of privacy and therefore does not constitute a search. [Citations.] Consequently, no warrant is needed to justify installation of an electronic beeper unless fourth amendment rights would have to be violated in order to initially install the device." (*United States v. Pretzinger* (9th Cir. 1976) 542 F.2d 517, 520.)

The Ninth Circuit revisited this issue in *U.S. v. McIver* (9th Cir. 1999) 186 F.3d 1119 (*McIver*). In that case officers "placed two magnetized tracking devices on the undercarriage of the" defendant's vehicle (*id.* at p. 1123) "while it was parked in his driveway." (*Id.* at p. 1126.) The defendant conceded that the vehicle "was outside the curtilage." (*Ibid.*) The court assumed for the sake of argument "that the officers committed a trespass in walking into McIver's open driveway" (*ibid.*), but concluded that their action was not a search. The court reasoned that " '[t]he undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy.' " (*Id.* at p. 1127.) There was no evidence that the defendant intended to shield the vehicle's undercarriage from inspection by others. (*Ibid.*)

The court also concluded that the placement of the tracking devices was not a seizure of the defendant's vehicle, because it did not interfere with his possessory interests. (*McIver, supra,* 186 F.3d 1119, 1127.)

We agree with the reasoning expressed in *McIver*. There can be no objectively reasonable expectation of privacy in what is regularly exposed to

public view. While the undercarriage of a vehicle is not as readily seen as the hood, doors, and other parts of its exterior, the undercarriage is part of the exterior that is ordinarily exposed to public view. It does not amount to a search to examine the undercarriage, to touch it, or to attach a tracking device, so long as a police officer does so from a place where the officer has a right to be.

It is a factual question where defendant's truck was parked when the tracking device was attached. The testifying officer could not remember, other than it was in the driveway of defendant's residence. Defendant suggests it might have been in his carport, but the photographs in evidence reveal that since the carport was too shallow and too narrow to accommodate a pickup truck, defendant's truck must have been parked alongside his residence.

Assuming the truck was parked within the curtilage of defendant's residence, the remaining question is whether the detective was entitled to walk up to it. The private street leading to the residential units was posted for tenant parking only. The normal route for a visitor to defendant's front door from the public street would be to walk up the private street, walk a short distance up defendant's driveway, and walk up a sidewalk to the front door. In so doing, any visitor would have to navigate around part of defendant's truck in the residence's driveway. On the record before us, we would conclude that the detective who walked up the driveway and placed an electronic tracking device on the undercarriage of the truck did not violate any reasonable expectation of privacy and that the detective's conduct in this case did not amount to a search within the meaning of the Fourth Amendment.

We observe that it is a separate question whether monitoring signals from a tracking device is a search. (*United States v. Butts, supra,* 710 F.2d 1139, 1145-1146.) The United States Supreme Court has concluded that monitoring electronic signals does not amount to a search when the only information provided is what could be obtained through visual surveillance, such as the movements of an automobile on public thoroughfares. (*United States v. Knotts* (1983) 460 U.S. 276, 281-282, 285 [103 S.Ct. 1081, 1085, 1087, 75 L.Ed.2d 55].) Monitoring does amount to a search when it reveals information about otherwise hidden activities inside a residence. (*United States v. Karo* (1984) 468 U.S. 705, 715 [104 S.Ct. 3296, 3303, 82 L.Ed.2d 530].) In our case, monitoring the tracking device simply revealed the movements of defendant's truck on city streets. Defendant's complaint here concerns installation of the device, not the monitoring of its signals.

For all the reasons above, we conclude that the trial court did not err in denying defendant's suppression motion.

## 2. Motion to Strike Prior Strikes

Defendant made a motion to strike his five prior convictions of residential burglary. After a hearing, the trial court denied this request. On appeal defendant challenges this ruling, contending that the trial court misunderstood its discretion.

### A. *The hearing on the motion to strike the prior strikes*

The probation report explained: "The defendant's criminal record consists of nine felony convictions. A First Degree Burglary in 1984, resulted in a two (2) year prison term. In 1985, the defendant was convicted of two counts of First Degree Burglary, and a 32-month prison term was ordered to be served, consecutive. In 1989, the defendant was convicted of Possession of Cocaine and Possession of a Forged Check. He was granted three (3) years formal probation and a 10 months County Jail sentence was imposed. In 1990, he was convicted of two (2) counts of Petty Theft with a Prior, and his probation was violated resulting in a two (2) year prison term. In 1991, while involved in a state work furlough program, he left the program, which resulted in a six month County Jail sentence with probation to terminate upon release. In 1992, the defendant was convicted of two counts of First Degree Burglary and was sentenced to prison for eight (8) years. The defendant's record also includes seven misdemeanor convictions."

"The defendant has an extensive criminal record, consisting primarily of First Degree Burglaries and other thefts motivated to support the defendant's severe drug addiction [to cocaine]. The defendant was most recently paroled on July 24, 1996. He was violated on October 22, 1997 for involvement in an alleged Second Degree Burglary, although later acquitted, and was released from custody on September 17, 1998."

The probation report noted in defendant's favor that his criminal record was free from violence.

Defendant told the probation officer that all his crimes were motivated to support his cocaine habit. Since his latest release from prison, he was burglarizing construction sites, "taking tools to sell for more 'dope.'"

The probation officer recommended that "defendant be committed to the California Department of Corrections for 25 Years to Life," after stating: "Although the undersigned believes the defendant's behavior warrants a prison commitment, the lack of violence in his behavior and the fact the present offense is neither serious nor violent merits some consideration.

Without minimizing the trauma the defendant caused prior victims, and not condoning the defendant's record, a 25-year-to-life commitment appears excessive in view of the current charge."

Defendant presented letters and testimony from a psychiatrist, Dr. Jay Jackman, and a chemical dependency counselor, Candice Ventra, to the effect that he has finally obtained insight into his addiction, he has accepted personal responsibility, he is tired of the detrimental effects on his life, and he is prepared to change.

The prosecutor submitted a 1990 letter by defendant to his probation officer stating that he was just learning through programs to ask for help and to deal with life on its own terms. The prosecutor also submitted a 1992 probation report quoting defendant as saying his entire criminal history was due to his drug problem. During his latest incarceration, he has realized for the first time the seriousness of his drug problem. He has been in a substance abuse program and would like to overcome the problem and get on with his life.

## B. *Trial court ruling*

After the hearing on the motion to strike, the trial court explained why it was denying defendant's request. "[T]his is probably one of the hardest cases." "I agree with probation 25 years to life is harsh. I don't know if I would use the word excessive. It's a terrible penalty to pay. In this case Mr. Zichwic is not a violent man or at least only one perhaps semi-incident years ago. He changed from one type of crime to another type of crime, but the People of California listed in their wisdom or at least ballet box serious and violent felonies they listed the kind of things Mr. Zichwic has done repeatedly and repeatedly." The Three Strikes law "does not just apply to crazy people. It does not just apply to violent people. It does not just apply to sexual predators. It applies to residential burglary, commercial burglaries."

The court mentioned reading in prior cases that defendant had offered to deal with his substance abuse problems. "I go back through these reports. I read and read the exact same words I am hearing now. [Defense counsel] has argued very well in chambers that the experts testified at the sentencing hearing a few weeks ago said [*sic*] they felt Mr. Zichwic says he is tired of it which is one of the words that we oftentimes look for. He has now released his problem."

"The problem I have as a judge and I have a great deal of empathy and sympathy here but to strike four prior convictions. . . . I can't strike it because I feel it is harsh."

"I don't feel from my reading of the code sections and of the *Williams*[2] case and once [*sic*] after it I think that it would be an abuse of my discretion to strike four strikes to get him down to something reasonable. I would like to. I would like to have Mr. Zichwic serve about 10 or 15 years on this, but I truly do not feel within the law that I can do that given the parameters set forth in the various cases. So I don't feel I have the legal authority to do that. I am sorry." "It's a long hard sentence. I don't like it. I don't think I have a choice."

When defense counsel asked if the court felt it did not have the authority to strike the strikes, the court responded, "I don't believe I have the power to strike them pursuant to the guidelines set forth in the *Williams* case and cases that followed *Williams*. When I place his situation up against those parameters I find it doesn't fit. I don't think I could do it." When the prosecutor asked if the court found the case within the spirit of the strike law, the court responded, "I think it does. I don't know if I agree with it but I am going to do it."

### C. *Validity of the ruling*

*People v. Garcia* (1999) 20 Cal.4th 490 [85 Cal.Rptr.2d 280, 976 P.2d 831] (*Garcia*) summarized earlier California Supreme Court precedent on the trial court's authority to strike prior strikes.

As *Garcia* summarized *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], "we stressed that '[a] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited.' (*Romero, supra,* 13 Cal.4th at p. 530.) Drawing from prior cases construing section 1385, we reaffirmed the ' "[p]aramount" ' principle that a trial court must ' " 'consider[] both . . . the constitutional rights of the defendant, and *the interests of society represented by the People* . . . .' " ' (*Romero, supra,* 13 Cal.4th at p. 530, quoting *People v. Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193], original italics.) We added that a court may not strike a sentencing allegation 'solely "to accommodate judicial convenience or because of court congestion." ' (*Romero, supra,* 13 Cal.4th at p. 531, quoting *People v. Kessel* (1976) 61 Cal.App.3d 322, 326 [132 Cal.Rptr. 126].) Nor may a court strike a sentencing allegation 'simply because a defendant pleads guilty.' (*Romero, supra,* 13 Cal.4th at p. 531.) Finally, we stated that a court may not strike a sentencing allegation ' "guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant," while ignoring "defendant's background," "the nature of his present offenses," and other

---

[2]*People v. Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429] (*Williams*).

"individualized considerations." ' (*Ibid.*, quoting *People* v. *Dent* (1995) 38 Cal.App.4th 1726, 1731 [45 Cal.Rptr.2d 746].)" (*Garcia, supra,* 20 Cal.4th at pp. 497-498.)

As *Garcia* summarized *Williams*, "the trial court could give 'no weight whatsoever . . . to factors extrinsic to the [Three Strikes] scheme.' (*Williams, supra,* 17 Cal.4th at p. 161.) On the other hand, the court must accord "preponderant weight . . . to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects.' (*Ibid.*) Ultimately, a court must determine whether 'the defendant may be deemed outside the scheme's spirit, in whole or in part.' (*Ibid.*)" (*Garcia, supra,* 20 Cal.4th at pp. 498-499.) *Garcia* added, "a defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*Id.* at p. 500.)

■ We observe that section 1385, subdivision (a), requires trial courts to state reasons for granting a motion to strike (*Williams, supra,* 17 Cal.4th at p. 159; *People v. Superior Court (Romero), supra,* 13 Cal.4th at pp. 530-531), but not for declining to strike a strike. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032-1033 [224 Cal.Rptr. 208].)

■ On appeal defendant contends that the trial judge misunderstood his discretion to strike defendant's strikes. If the judge had properly understood his discretion, his sympathetic remarks show that he would have stricken them.

We see no evidence of such a misunderstanding. The trial court was familiar with the leading *Williams* case, mentioning it several times. The court recognized that defendant would only escape a life sentence if four of his five strikes were stricken. The court also recognized that it could not strike a strike based on a personal feeling that the Three Strikes law is harsh. Defendant cites no factor about his background or crime of which the trial court was unaware. The court noted that defendant was not a violent person and that he had changed the type of crime he committed.

Our review of the trial judge's remarks reflects that he was aware of his limited discretion to strike strikes. The court did not neglect its own findings, as defendant asserts. Instead, after considering "the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and

prospects," the court could find no reason for concluding that defendant fell outside the spirit of the Three Strikes statute. His residential burglaries qualified as prior strikes.

██ An appellate court is not authorized to substitute its judgment of the relative weights of aggravating and mitigating factors properly considered by the trial court. (*People v. Hetherington* (1984) 154 Cal.App.3d 1132, 1140-1141 [201 Cal.Rptr. 756]; *People v. Calderon* (1993) 20 Cal.App.4th 82, 87 [26 Cal.Rptr.2d 31].) "It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 [81 Cal.Rptr.2d 564]; cf. *People v. Bishop* (1997) 56 Cal.App.4th 1245, 1249-1250 [66 Cal.Rptr.2d 347].) We conclude on this record that the trial court did not abuse its discretion when it denied defendant's motion to strike his five prior strike convictions of residential burglary.

### DISPOSITION

The judgment is affirmed.

Wunderlich, J., concurred.

**O'FARRELL, J.,**\* Concurring and Dissenting.—As a parolee, defendant was subject to a greatly reduced expectation of privacy. As such, I agree that the surveillance method employed here was not unduly intrusive.

However, I respectfully dissent as to the sentencing issue.

After carefully evaluating the facts of the present offense as well as the defendant's prior history, the trial court expressed a desire to strike priors in furtherance of justice for the purpose of imposing a sentence that was reasonable in light of all relevant factors. (Pen. Code, § 1385, subd. (a) and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*)). However, the court expressed a belief that it lacked the power to do so, relying primarily on *People v. Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429] (*Williams*).

The reason for striking a prior in furtherance of justice should at least be " ' "that which would motivate a reasonable judge." ' " (*Romero, supra,* 13

---

\*Judge of the Monterey Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Cal.4th at pp. 530-531). It would be an abuse of discretion to do so simply for the purpose of judicial convenience or because of court congestion, or simply because a defendant pleads guilty, or if the court is guided solely by a personal antipathy for the effect of the three strikes law.

The record reflects that the trial court harbored none of these improper motives. What it does show is that the court was motivated by the lack of violence in the defendant's history and the fact that the present offense was neither serious nor violent.

The court indicated that it was constrained by *Williams,* from exercising discretion to strike. I disagree. The defendant in *Williams* pled guilty to driving under the influence of phencyclidine (PCP) and had a history of violence, including convictions for rape, felon in possession of a firearm (twice), attempted robbery and spousal battery. The probation officer's report described him as a "clear and present danger to the community and to himself." In its decision the Supreme Court found "nothing" favorable to defendant's position. "The record on appeal is devoid of mitigation." (*Williams, supra,* 17 Cal.4th at p. 163.)

Although defendant's history and this offense bring him within the letter of the three strikes law, the Supreme Court has directed that sentencing courts must look to whether a given defendant comes within the *spirit* of that law in ruling on a motion to strike priors. If he may be deemed outside that spirit, in whole or in part, he should be treated as though he had not previously been convicted of one or more of the qualifying felonies. (*Williams, supra,* 17 Cal.4th at p. 161.) A glimpse of the legislative history to the three strikes initiative helps define the spirit and purpose of the law as the proponents envisioned it. "3 Strikes keeps career criminals, who rape women, molest innocent children and commit murder, behind bars where they belong." (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) argument in favor of Prop. 184, p. 36.)

I agree with the majority that an appellate court is not authorized to substitute its judgment for the properly exercised judgment of the trial court. But here the record shows that the trial court incorrectly felt it was foreclosed from exercising that discretion.

I would remand the matter for reconsideration of sentencing.

Appellant's petition for review by the Supreme Court was denied March 27, 2002. Chin, J., did not participate therein. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.