Filed 10/24/13  P. v. Barrios CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038964 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1226111) |
| v. | |
| ALEXANDER BARRIOS, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

After a parole search revealed .12 grams of methamphetamine in his pants pocket, defendant Alexander Barrios was charged by a complaint filed February 16, 2012, with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) following his 2002 convictions of the serious felonies of rape and assault to commit rape (Pen. Code, §§ 667, subds. (b) - (i), 1170.12)[1] with a prison term enhancement (§ 667.5, subd. (b)). On July 12, 2012, the trial court ordered the assault strike stricken.  Pursuant to an offer of a "32-month top" prison sentence if the court did not grant defendant's request to strike his remaining strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), on September 14, 2012, defendant pleaded guilty as charged and admitted the prior conviction and prison term.

---

[1] Unspecified section references are to the Penal Code.

The People opposed defendant's written requests to strike the remaining strike and reduce his conviction to a misdemeanor. At a hearing on October 18, 2012, the trial court denied defendant's requests and sentenced him to 32 months in prison, the lower term doubled due to the strike, also imposing the minimum restitution fine under section 1202.4, a court security fee (§ 1465.8), a criminal conviction assessment (Gov. Code, § 70373), a criminal justice administration fee (Gov. Code, §§ 29550 - 29550.2), a crime lab fee (Health & Saf. Code, § 11372.5) and a drug program fee (Health & Saf. Code, § 11372.7).

On appeal defendant contends the trial court abused its discretion in not reducing his current conviction to a misdemeanor under section 17 and not striking his prior conviction under section 1385. We will affirm the judgment after stating our reasons for finding no abuse of discretion.

## II. THE SHOWING ON DEFENDANT'S MOTIONS

### A. DEFENDANT'S CHILDHOOD

According to the probation report, defendant was born in Puerto Rico in 1982. His mother brought defendant and his five siblings to live in the United States when he was six years old.

Defendant's motions included the following unverified assertions by his attorney. Defendant was conceived during a spousal rape. He had several head injuries as a child. He was sexually abused in Puerto Rico by a female babysitter. His father abused drugs and defendant's mother, so she moved to the United States with her six children and supported them as a single parent. Defendant's mother used to beat him for ignoring her until he had surgery to correct a hearing problem. The family moved frequently. Defendant attended six different high schools. He had serious learning difficulties and was in special education classes.

Defendant told the probation officer that he began using alcohol and drugs at the age of 13. At 14, he was drinking daily. He began using methamphetamine as much as

2

he could. Marijuana was his drug of choice after having been introduced to it at the age of 13.

## B. DEFENDANT'S CRIMINAL HISTORY

According to the probation report, defendant admitted to the probation officer that he left school at 17 after he participated in a theft or robbery by several boys, one of whom had a gun.

On February 7, 2001, at the age of 18, defendant was convicted of misdemeanor vehicle theft (Veh. Code, § 10851, subd. (a)) and unlicensed operation of a motor vehicle (Veh. Code, § 12500, subd. (a)), for which he was placed on two years' informal probation.

The probation report summarized a police report of three felonies defendant committed on January 23, 2002. He approached a woman around 1:00 p.m. in downtown San Jose, called her by her nickname, and told her a friend needed to talk to her. When they went into an abandoned apartment, defendant told the woman he would pay $150 for sex with her. When her reply was "no," he told her if she did not have sex with him, he would beat her to death. He punched her several times and had vaginal intercourse with her. She refused his request to turn over so that he could sodomize her, so he punched and choked her and attempted to sodomize her when he got her on her stomach. She grabbed a pocket knife from her pants pocket and stabbed defendant several times in order to get him to back away. After defendant fled the scene, the victim left the apartment and reported the incident to a patrol officer. The victim had a bite mark on her face and lips, lacerations, bruising, and swelling on her face, and scratches and red marks on her neck.

The probation report also stated that, while the victim was being treated at the hospital, the defendant came to the emergency room, claiming to have self-inflicted knife wounds. When officers on the scene prepared to photograph his wounds, defendant admitted lying about his injuries and said he had raped and beaten the victim.

Defendant's version of their encounter was that he was " 'horny' " and under the influence of alcohol, methamphetamine, and marijuana, so he contacted a prostitute. She initially agreed on a price of $150 for sex, but reconsidered when they went to a vacant apartment. Defendant punched her and said he would hit her more if she resisted. He raped her and continued to assault her until she stabbed him.

Defendant was taken into custody and his probation was revoked.

On October 9, 2002, defendant was convicted of assault with intent to commit rape (§ 220), forcible assault (§ 245, subd. (a)(1)) and forcible rape (§ 261, subd. (a)(2)), for which he was sentenced to nine and one-third years in prison. He is required to register with local law enforcement as a sex offender.

Defendant gave a different version of these events to the probation officer. He said that he was drinking and using methamphetamine and wanted revenge because a different prostitute had " 'worked' " him earlier the same day, so he took out his frustration on the victim.

On January 16, 2010, defendant was released on parole. On April 14, 2010, he was convicted of misdemeanor unlicensed driving (Veh. Code, § 12500, subd. (a)) and placed on informal probation.

According to the probation report, defendant was returned to prison several times for parole violations, including on June 4, 2010 and August 24, 2011. "He has sustained five Violations of Parole, all of which involved the use and/or possession of methamphetamine, three of which resulted in him being returned to prison for additional terms."

#### C. THE CURRENT CRIME

According to the probation report, around midnight on February 11, 2012, officers on routine parole observed defendant cross several lanes of traffic on his unlit bicycle and stop at a convenience store. A records check during a pedestrian stop for Vehicle Code violations revealed defendant's parole status. Defendant consented to a search that

4

yielded .12 grams of methamphetamine in a baggie in defendant's right front pants pocket.

## D. DEFENDANT'S PROSPECTS

According to the probation report, defendant made no statement to the police when he was arrested, but he later told a probation officer that, due to his sex offender status, it was difficult to secure steady employment. He was transient and living in a van. He had resumed using methamphetamine about three months earlier, but was trying to quit on his own by tapering off his usage. He was unable to get into a treatment program. He had used marijuana the day he was arrested.

The probation report noted that "defendant had limited support in the community both from family and from programs."

Defendant's motions asserted he was unable to live at home due to his parole conditions, so he was transient. He has had various jobs including landscaping and painting, but nothing steady. He has looked for programs to help him but was not accepted except by his church community. His pastor was eager to help him.

In jail defendant has gotten involved with GED classes, Narcotics Anonymous, and other programs. He had certificates for completing several jail programs and a typed "Re-entry Plan" dated August 2012.

At a hearing on October 18, 2012, defendant, his pastor, and Hugh Cox, defendant's jail therapist/tutor, spoke on his behalf. His pastor spoke about the dysfunction in defendant's family and his struggles with addiction. His congregation supported defendant. His pastor had a place for him to live and believed that defendant could become a productive citizen with help.

Defendant's tutor said that defendant had made major changes in his thinking and his perspective on life. His tutor would be there to make sure he got to work and lived up to other obligations. His tutor also submitted a letter in support.

5

Defendant said that until he was incarcerated, "I was in heavy denial. I was in drug addiction through pain, through lack of understanding of my identity. But who I am today is somebody in recovery." He has jobs waiting for him. He has "now developed a strength and understanding of a great support group that I have out there to help me stay in sobriety and learn how to live prosperous and successful living out there."

### III. THE COURT'S RULING ON DEFENDANT'S MOTIONS

After hearing from the witnesses and counsel on October 18, 2012, the court stated: "This is a difficult case for me to decide. There are several good things going in Mr. Barrios's favor. The fact of the age of the strike. The fact that the present offense is not a serious or violent felony. That it's a minimal amount involved in terms of quantity of the drugs.

"However, looking at both sides of the issue here, I also have to consider the fact that the prior strike was an extremely violent felony. There was injury to the victim in the case.

"The only thing I've seen in his history where he's gotten any treatment was while he was incarcerated. He's been entering into programs while he's been in jail, and he's to be commended for that. But when he's out of jail, he doesn't seem to do that.

"I also look at the fact that he committed this crime, the present crime, while he was on parole which is just one more violation of the parole. [¶] So his prior performance on parole - and I have to look at that in terms of possible probation - his prior performance on parole has not been good.

"He's been unemployed. He's been transient. He has limited support from his family. The fact that the Reverend and his teacher are here to support him is also a good thing; however, I see limited support from his family, the family core group. And I have to look at the fact that he's only been out of prison for a little over two years, and he's violated his parole five times already, three of which he's been recommitted to prison.

6

"His probation officer has indicated in the probation report that in working with Mr. Barrios he doesn't seem to be motivated very much to do much of anything. I note that he's really never had any employment more than three months his entire lifetime.

"Given all of those factors, I think I have to look at this, and the negatives seem to outweigh the positives. In looking at all of the things that I've had to review here - and I did review the probation report in its entirety which was very complete - I just can't say that it's in the interest of justice to reduce this matter to a misdemeanor.

"Even though it's a small amount of drugs, given all of the other factors, I also - given all the factors that I've looked at, I cannot with a clear conscience say that this matter clearly falls outside the scheme of the three strikes law. So I'm going to deny both motions."

## IV. ANALYSIS UNDER SECTION 1385

On appeal defendant contends that the trial court, in declining to dismiss his prior strike, abused its discretion by its "failure to give appropriate consideration to these factors [in defendant's favor], its undue consideration to [*sic*] the prior offense, and its insufficient appreciation of the petty nature of the current offense . . . ."

Section 1385, subdivision (a), states in part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes."

The California Supreme Court has provided much guidance for trial courts considering whether to dismiss under section 1385 a serious or violent felony conviction which is alleged as a strike under the Three Strikes statutes (§§ 667, subds. (b) - (i), 1170.12). (E. g., *Romero*, *supra*, 13 Cal.4th 497 [concluding strike allegations are subject to § 1385]; *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*) [finding abuse of discretion in striking a strike]; *People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*) [finding no abuse of discretion in striking a strike as to one count, though not another]; *People v.*

*Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*) [establishing standard of review when *Romero* motion is denied].) *Garcia* summarized *Williams* as holding, "the trial court could give 'no weight whatsoever . . . to factors extrinsic to the [Three Strikes] scheme.' (*Williams*, *supra*, 17 Cal.4th at p. 161.) On the other hand, the court must accord 'preponderant weight . . . to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects.' (*Ibid.*) Ultimately, a court must determine whether 'the defendant may be deemed outside the scheme's spirit, in whole or in part.' (*Ibid.*)" (*Garcia*, *supra*, 20 Cal.4th at pp. 498-499; cf. *Carmony*, *supra*, 33 Cal.4th at p. 377.)

This court has previously observed, "section 1385, subdivision (a), requires trial courts to state reasons for granting a motion to strike (*Williams, supra,* 17 Cal.4th at p. 159; *Romero, supra,* 13 Cal.4th at pp. 530-531), but not for declining to strike a strike." (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 960 (*Zichwic*); cf. *In re Large* (2007) 41 Cal.4th 538, 550-551.)

The Supreme Court has also identified the standard for appellate review. "[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*Carmony*, *supra*, 33 Cal.4th at 367, 374.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978 (*Alvarez*), [citation].) Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' (*Alvarez,* at p. 978, [citation].) Taken

together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, Cal.4th at pp. 376-377; cf. *Zichwic*, *supra*, 94 Cal.App.4th at p. 944, 961.)

On appeal, defendant emphasizes factors in his favor. His current offense is classified alternatively as a felony or misdemeanor. It involved a very small amount of drugs and no violence. Since his last arrest, he has participated in rehabilitation programs in jail.

In denying a request to dismiss a strike allegation, a trial court is not required to expressly analyze and reject each circumstance arguably favoring dismissal. Here the trial court has facilitated our review by making a record of its reasoning, mentioning almost every one of the factors now advanced by defendant.

Defendant complains that the trial court attached greater significance to unfavorable circumstances, including that his prior felony involved extreme violence; he has violated parole five times in the two years since his release from prison and was returned to prison three times; he has only obtained treatment while incarcerated; and he has never held a steady job, has limited family support, and little ambition to better himself.

Defendant contends that his prior offense was atypical and involved him punching a prostitute who had reneged on their agreement. "There is no suggestion that he used any weapon or inflicted great bodily injury." As the Attorney General points out, defendant ignores the report that he punched, choked, raped, and attempted to sodomize the victim, and that she obtained medical treatment for the injuries she suffered before she was able to fight defendant off. Defendant replies that he was not convicted of personally inflicting great bodily injury.

Defendant argues that the trial court gave undue weight to the circumstances of his prior strike and inadequate weight to the circumstances of his current offense. In other

9

words, the trial court struck the wrong balance. As the sole target of the Three Strikes law is repeat offenders, the likelihood of defendant's recidivism was an appropriate concern for the trial court. The other factors cited by the judge were also relevant to the prospect of defendant avoiding future criminal conduct.

The issue on appeal is not whether we might reasonably disagree with how the trial court weighed the relevant factors, but whether the conclusion reached by the trial court was irrational or arbitrary. (*Carmony*, *supra*, 33 Cal.4th at 367, 379; *Zichwic*, *supra*, 94 Cal.App.4th at p. 961; *People v. Philpot* (2004) 122 Cal.App.4th 893, 905; *People v. Leavel* (2012) 203 Cal.App.4th 823, 837.) We conclude that defendant has not established an abuse of discretion in this case. It follows from this conclusion that the court's sentencing choice did not deprive defendant of due process.

## V. ANALYSIS UNDER SECTION 17

Defendant contends that the trial court abused its discretion in denying his request to reduce his conviction to a misdemeanor under section 17.[2] If the court had reduced the current conviction to a misdemeanor, then the Three Strikes consequences of the prior strike, including term doubling, would not have attached. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 294; *People v. Trausch* (1995) 36 Cal.App.4th 1239, 1247; *Alvarez*, *supra*, 14 Cal.4th at p. 975.)

---

[2] When defendant was apprehended on the night of February 11, 2012, as now, Health and Safety Code section 11377 provided that unauthorized possession of various controlled substances, including methamphetamine, "shall be punished by imprisonment in a county jail for a period of not more than one year or pursuant to subdivision (h) of Section 1170 of the Penal Code." Section 1170, subdivision (h), generally provided for imprisonment either in prison or county jail for a felony conviction. A violation of Health and Safety Code section 11377 appears to remain a "wobbler" punishable as either a misdemeanor or a felony (*Alvarez*, *supra*, 14 Cal.4th at 968, 980) under the realignment legislation.

Section 17 provides in part: "(b) When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170. [¶] ... [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

Under the California Rules of Court, rule 4.406(b), while trial courts are not required to give reasons for a ruling under section 17, subdivision (b), "Sentence choices that generally require a statement of a reason include: [¶] (1) Granting probation; [¶] (2) Imposing a prison sentence and thereby denying probation . . . ." When the refusal to reduce a conviction to a misdemeanor results in the denial of probation, a trial court should give a statement of reasons. (Cf. *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90.) The trial court did so in this case.

In *Alvarez*, the California Supreme Court provided general guidelines for the exercise of discretion under this statute, stating: "We find scant judicial authority explicating any criteria that inform the exercise of section 17(b) discretion. [Citation.] However, since all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in [the rules of court. Fn. omitted] The corollary is that even under the broad authority conferred by section 17(b), a determination made outside the perimeters drawn by

11

individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.'" (*Alvarez, supra*, 14 Cal. 4th 968, 978.)

*Alvarez* also held "that three strikes prior convictions do not preclude a trial court from reducing an offense originally charged as a felony either by imposing a misdemeanor sentence (§ 17(b)(1)) or by declaring it a misdemeanor upon a grant of probation (§ 17(b)(3))." (*Alvarez, supra*, 14 Cal.4th at p. 979.) "[T]he fact a wobbler offense originated as a three strikes filing will not invariably or inevitably militate against reducing the charge to a misdemeanor. Nonetheless, the current offense cannot be considered in a vacuum; given the public safety considerations underlying the three strikes law, the record should reflect a thoughtful and conscientious assessment of all relevant factors including the defendant's criminal history." (*Ibid.*)

The standard of review on appeal is the same standard stated above for reviewing a ruling on a *Romero* motion. Indeed, *Carmony* applied to *Romero* motions the standard of review stated in *Alvarez* for motions under section 17, subdivision (b).

Defendant asserts that under *Alvarez*, his "criminal history, although relevant to the decision, is not dispositive." We agree. The analysis in *Alvarez* suggests that the spirit of the three strikes law should not control a judicial decision about whether to reduce a conviction to a misdemeanor when the defendant has one or more prior strikes, though concerns about recidivism are among those that are relevant.

Defendant points out that in *Alvarez*, the California Supreme Court upheld a ruling reducing the defendant's methamphetamine possession to a misdemeanor despite four burglary strikes and several parole violations. (*Alvarez, supra*, 14 Cal.4th at p. 981.) An officer had contacted the defendant for riding a skateboard on the wrong side of the street and a consensual search revealed .41 grams of methamphetamine in the defendant's possession. (*Id.* at p. 973.) "The trial court acknowledged defendant's substantial criminal history with its implications for public safety, but accorded that factor less weight than the fact it considered his current offense 'for sure' a misdemeanor.

12

[Citation.]  Defendant was cooperative with law enforcement.  The burglary priors were relatively old and did not involve violence.  [Citation.]  In addition, the court had observed defendant during the course of the trial, including his testimony he had been caring for a disabled friend." (*Id.* at p. 981.)

*Alvarez* explained:  "Applying the extremely deferential and restrained standard by which appellate courts are bound in these matters, we find the trial court did not abuse its discretion.  Whatever conclusions other reasonable minds might draw, on balance we find the decision tolerable given the court's broad latitude.  [Fn. omitted]  Nevertheless, we caution that the circumstances of this case are not intended to and do not establish a 'floor' below which reviewing courts may never find an abuse of section 17(b) discretion to reduce a wobbler involving three strikes prior convictions.  On the contrary, the lesson we reiterate today is that any exercise of that authority must be an intensely fact-bound inquiry taking all relevant factors, including the defendant's criminal past and public safety, into due consideration; and the record must so reflect." (*Alvarez*, *supra*, 14 Cal.4th at pp. 981-982; cf. *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1457.)

Here, the trial court weighed the favorable and unfavorable factors that were relevant and not impermissible before finding that the balance tilted against reducing the conviction to a misdemeanor.  We conclude that defendant has fallen short of establishing that the challenged ruling was outside the broad latitude afforded the trial court.  Finding no error, we also find no denial of due process.

13

## VI. DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.

14