Filed 7/18/13  P. v. Royal CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT HAIG ROYAL,<br><br>    Defendant and Appellant. | 2d Crim. No. B241841<br>(Super. Ct. No. 1366248)<br>(Santa Barbara County) |

Robert Haig Royal appeals from the judgment entered after a jury convicted him of second degree robbery.  (Pen. Code, §§ 211, 212.5.)[1]  Appellant admitted one prior serious felony conviction (§ 667, subd. (a)(1)) and one prior serious or violent felony conviction within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  The trial court sentenced him to prison for 11 years.

Appellant contends that (1) the evidence is insufficient to establish the "force or fear" element of robbery, (2) the trial court gave an erroneous special instruction on the meaning of the "fear" element, and (3) the trial court erroneously denied his section 1538.5 motion to suppress evidence seized by the police after they had stopped his vehicle.  We affirm.

---

[1] All statutory references are to the Penal Code.

1

*Facts*

Appellant entered a bank and handed a note to a teller. The note read, " 'This is a robbery. Give me all the money that you have in the drawer and no bait.' " After the teller read the note, appellant declared, "This is a robbery," and he demanded all of the money in the drawer. Appellant did not display a weapon, but he kept one hand inside a pocket. The teller feared for his own safety and the safety of his co-workers. He handed over $9,368.75, after which appellant left the bank.

A video of the bank robbery was shown on the local television news. An anonymous citizen told the Federal Bureau of Investigation (FBI) that the bank robber looked like appellant. Michael Claytor, a police detective, checked appellant's criminal record and found that he was on parole. Claytor obtained a photograph of appellant and confirmed that he looked like the bank robber. Appellant's parole agent agreed.

Detective Claytor conducted a parole search of appellant's residence and recovered "an empty gun holster and a loaded .32 magazine for a firearm." The parole agent authorized appellant's arrest.

FBI agents located appellant's unoccupied vehicle in a parking lot. The agents maintained surveillance until 3:00 a.m., when they attached a Global-Positioning-System (GPS) tracking device to the vehicle.

At approximately 9:35 a.m., the GPS tracking device indicated that the vehicle was moving. Police officers stopped the vehicle and arrested appellant. On the way to the station, appellant said that "he would admit everything." During a search of his vehicle, the police recovered about $7,400 in cash.

*Sufficiency of the Evidence*

Appellant contends that the People "failed to present sufficient evidence that the taking of property . . . was accomplished by force or fear." We "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - that is, evidence that is reasonable, credible, and of solid value -

2

such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

" ' "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [the victim's] property." ' [Citation.] 'The extent of the victim's fear "do[es] not need to be extreme . . . ." ' [Citation.] '[T]he fear necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' [Citation.] . . . ' " 'Where intimidation is relied upon, it [can] be established by proof of conduct, words, or circumstances reasonably calculated to produce fear.' " ' [Citations.]" (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319.)

*People v. Bordelon*, *supra*, 162 Cal.App.4th 1311, is instructive on the fear issue. In *Bordelon* the defendant was convicted of bank robbery. The defendant walked up to a teller, pushed aside the customer she was helping, and put a plastic bag on the counter. The defendant said: " 'This is a robbery. Put your money in the plastic bag.' " (*Id*., at p. 1316.) The teller complied after the defendant had twice repeated this demand. On appeal the defendant contended that the trial court had erroneously refused his request to instruct the jury on the lesser included offense of grand theft.

The appellate court concluded "that the evidence for grand theft was too 'minimal or insubstantial' to warrant an instruction on that lesser offense." (*People v. Bordelon*, *supra*, 162 Cal.App.4th at p. 1320.) The court reasoned: "While there was no evidence that defendant used a weapon, assaulted [the teller], or verbally threatened her, '[s]uch factors . . . are not requisites for a finding of robbery.' [Citation.] Defendant's words and conduct—his pushing a customer aside, his escalating demands for the money—were reasonably calculated to intimidate Yadao, and her testimony established that she was in fact 'shocked' and 'traumatized' by his actions. The element of fear was proven here, and no instruction on mere theft was warranted. [Citation.]" (*Ibid*.)

Unlike the defendant in *Bordelon*, appellant did not push a customer aside or make "escalating demands for the money." (*People v. Bordelon, supra*, 162 Cal.App.4th at p. 1320.) But like the defendant in *Bordelon*, appellant's conduct was reasonably calculated to intimidate the teller, and it did intimidate him. Appellant's statement, "This is a robbery," was an implied threat to use force if the teller did not comply with his demand to hand over the money. The teller testified that he feared for his own safety and the safety of his co-workers. The evidence, therefore, is sufficient to support appellant's robbery conviction.

### Jury Instructions

The trial court gave CALCRIM No. 1600 on robbery. The instruction provided that the taking of property must be accomplished by the defendant's use of "force or fear." The term "fear" included "fear of injury to the person himself or herself or injury to the person's family or immediate injury to someone else present during the incident."

Appellant contends that, over his objection, the trial court erroneously gave the following special instruction on fear: "In order to commit robbery, one does not have to commit an act intending to cause fear. The fear necessary for robbery is subjective in nature, requiring proof that the victim was in fact afraid, and that such fear allowed the crime to be accomplished. Where intimidation is relied upon, it can be established by proof of conduct, words, or circumstances reasonably calculated to produce fear. Intimidation and fear are synonymous."

During its deliberations, the jury asked the court in writing: "Is the definition of fear (instructions) different from the 'use' of fear in Robbery requirements? [¶] Are they 2 different issues? - existence of fear . . . and <u>use</u> of fear[?]" The court responded in writing: "The special instruction entitled 'fear' is intended to provide the jury a fuller, more complete definition of the element of 'fear' contained in the instruction for robbery ([CALCRIM] No[.] 1600)[.] [¶] The People have the burden of proving beyond a reasonable doubt that the defendant used 'force' or 'fear' as defined by instruction No. 1600 and the special instruction for 'fear'."

4

In his opening brief, appellant argues that the court's special instruction "clearly confused the jury" and caused a miscarriage of justice. Appellant continues: "The court's [special] instruction caused the jury to doubt its common sense understanding of the word 'fear' and to question whether there were actually two types of fear: 1) fear as used in the standard instruction, and 2) 'the use of fear[.]' "

Appellant corrects himself in his reply brief: "Appellant's Opening Brief mistakenly states that the instruction created confusion between 'fear as used in the standard instruction, and 'the use of fear.' . . . The reverse is true. The phrase 'use of fear' appears in Cal.Crim No. 1600." In his reply brief appellant argues that the special instruction created confusion because, unlike CALCRIM No. 1600, it said that to commit a robbery "one does not have to commit an act intending to cause fear." Appellant asserts, "The dual instructions forced the jury to sort out how a defendant would use force or fear, as stated in Cal.Crim No. 1600, and not do so intentionally."

Although the trial court's special instruction may have confused the jury on the meaning of "fear," appellant has not shown that the instruction was an erroneous statement of the law. Appellant cites no authority holding that the *intended* use of force or fear is an element of robbery, and we have been unable to find such authority. Nor has he shown that the trial court's response to the jury's question failed to clarify its confusion.

Appellant asserts that "the [special] instruction lessened the prosecution's burden," but he does not explain how the instruction had this effect. " 'A judgment or order of the lower court is *presumed correct*,' " and " 'error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority . . . . [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "Hence, conclusory claims of error [such as appellant's] will fail." (***Ibid***.)

Even if the special instruction were erroneous, it would not require reversal. "Reversal is required only if 'the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result

5

more favorable to [defendant] would have been reached in the absence of the error.' [Citations.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 571.)  It is not reasonably probable that a result more favorable to appellant would have been reached if the trial court had not given the special instruction.  As discussed in the preceding part of this opinion, there is ample substantial evidence to support the "fear" element of robbery. Even if, as appellant contends, the special instruction "implicated [his] federal constitutional right to be tried by an impartial jury," any error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705].)

*Search and Seizure*

Appellant maintains that the trial court erroneously denied his section 1538.5 motion to suppress evidence seized by the police after they had stopped his vehicle. Appellant asserts that the stop occurred as the result of signals transmitted by the GPS tracking device that FBI agents had attached to his vehicle.  He contends that the attachment of this device "subjected [him] to an unannounced, unnoticed and therefore unreasonable search" in violation of the Fourth Amendment.

After appellant's arrest, the Supreme Court decided *United States v. Jones* (2012) ___ U.S. ____ [181 L.Ed.2d 911, 132 S.Ct. 945,].  There, the court held that the attachment of a GPS "tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constitutes a search or seizure within the meaning of the Fourth Amendment."  (*Id*., 132 S.Ct. at pp. 947, 949.)

In denying the motion to suppress, the trial court determined that *Jones* was of no assistance to appellant because he was on parole.  The court stated: "I do find that at the time of the placement of the tracking device on [appellant's] vehicle, he had no reasonable expectation of privacy.  There had been a properly issued parole warrant for his arrest and search authorization given to law enforcement by state parole agents."

6

" '[W]e defer to the trial court's factual findings, upholding them if they are supported by substantial evidence, but we then independently review the court's determination that the search did not violate the Fourth Amendment.' [Citation.]" (*People v. Panah* (2005) 35 Cal.4th 395, 465.) "[W]e view the record in the light most favorable to the trial court's ruling . . . ." (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

"Under California statutory law, every inmate eligible for release on parole 'is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause.' (Pen.Code, § 3067, subd. (b)(3).) Upon release, the parolee is notified that '[y]ou and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections [and Rehabilitation] or any law enforcement officer.' [Citations.]" (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.) "[S]uch searches are reasonable, so long as the parolee's status is known to the officer and the search is not arbitrary, capricious, or harassing. [Citations.]" (***Ibid***.)

The attachment of the GPS tracking device to appellant's vehicle was a reasonable parole search. The FBI agents who attached it knew that appellant was on parole. Since the agents had probable cause to believe that appellant had robbed a bank, their conduct was not arbitrary, capricious, or harassing.

But appellant argues that the FBI agents' conduct was unlawful because they were not peace officers and only peace officers may conduct parole searches. (See §§ 3067, subd. (b)(3), 830.8.) Appellant has forfeited this issue because he failed to raise it below. "To allow a reopening of the question on the basis of new legal theories to support or contest the admissibility of the evidence would defeat the purpose of Penal Code section 1538.5 and discourage parties from presenting all arguments relative to the question when the issue of the admissibility of evidence is initially raised. [Citations.]" (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 640, fn. omitted.) This rule applies even when the facts are undisputed and the issue presents a pure question of law: "[T]he *Lorenzana* rule is designed to promote resolution at the trial

7

level not only of issues of fact but also issues of law." (*People v. Smith* (1983) 34 Cal.3d 251, 270, fn. omitted.)

In any event, appellant's argument lacks merit because Detective Claytor, who was a peace officer, was acting in concert with the FBI agents and authorized the attachment of the GPS tracking device. Detective Claytor testified that FBI Agent Conley "was with [him] throughout the entire investigation." FBI agents in the field "maintained surveillance on [appellant's] vehicle while Agent Conley and [Claytor] decided about what [they] were going to do next." Claytor and Conley discussed whether to attach the GPS tracking device to appellant's vehicle. According to Claytor: "The tracker was set up so that it would notify Agent Conley once the car moved, and at that point, we could contact local law enforcement to come into the area to see if it was, in fact, [appellant] driving and to effect the arrest itself."

Even if the attachment of the GPS tracking device were unlawful under *Jones*, we would still uphold the denial of the section 1538.5 motion. When the FBI agents attached the device to appellant's vehicle, binding California appellate precedent permitted the attachment. (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 953 ["installing an electronic tracking device on the undercarriage of defendant's truck did not amount to a search within the meaning of the Fourth Amendment"].) In *Davis v. United States* (2011) ___ U.S. ____ [180 L.Ed.2d 285, 131 S.Ct. 2419, 2429], the Supreme Court held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."

Moreover, the police inevitably would have arrested appellant and seized the challenged evidence. "The inevitable discovery doctrine operates as an exception to the exclusionary rule: Seized evidence is admissible in instances in which it would have been discovered by the police through lawful means. . . . 'The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct.' [Citation.]" (*People v. Superior Court* (2006) 143 Cal.App.4th 1183, 1214-1215.) "The doctrine does not require certainty. [Citation.] Rather, the People must show a 'reasonable probability that [the challenged

8

evidence] would have been procured in any event by lawful means.' [Citation.]" (*Id.*, at p. 1215.)

We may resolve inevitable discovery issues on appeal, "even if not explicitly litigated below, if their factual bases are fully set forth in the record. [Citations.] We conclude that such is the case here." (*People v. Boyer* (2006) 38 Cal.4th 412, 449.) If the FBI agents had not attached the GPS tracking device to appellant's vehicle, it is reasonably probable that they would have maintained surveillance on the vehicle until appellant drove away that morning, at which time they would have directed the police to stop and arrest him. The GPS tracking device was a substitute for continuing the surveillance. Detective Claytor made clear that it was not an option to leave the vehicle without surveillance or the GPS tracking device, since appellant could have driven it away at any time.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:



GILBERT, P.J.



PERREN, J.


9

Frank J. Ochoa, Judge

Superior Court County of Santa Barbara

_____

Laurie A. Thrower , under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Tannaz Kouhpainezhad, Deputy Attorney General, for Plaintiff and Respondent.