Filed 3/20/14  P. v. Duke CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ALVILEN DUKE,<br><br>      Defendant and Appellant. | B246650<br><br>(Los Angeles County<br> Super. Ct. No. BA394774) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Drew E. Edwards, Judge.  Affirmed.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Victoria B. Wilson, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Alvilen Duke appeals from a judgment, following a jury trial, in which he represented himself. The jury convicted defendant of one count of inflicting corporal injury on a cohabitant. In a bifurcated proceeding, the court found true defendant had suffered a prior felony that qualified as a strike under the "Three Strikes" law. Defendant was sentenced to an eight-year prison term. On appeal, defendant contends the trial court abused its discretion in refusing to allow impeachment evidence against the main prosecution witness, and also erred in denying his *Romero* motion to strike a prior strike.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of March 6, 2012, Karen K. was in her apartment with defendant, who had recently moved in with her. The apartment, No. 310, was on the third floor of the building. Howard Gray lived in an apartment on a lower floor, across a courtyard from apartment 310. Mr. Gray often heard yelling and profanity coming from apartment 310 (one female voice, one male).

On March 6, Mr. Gray heard another loud argument occurring in apartment 310 between a man and a woman. The yelling was on and off for almost an hour. He then heard a loud noise, like something "slamming" into the pavement in the courtyard. Mr. Gray ran to his window and saw defendant and Karen[2] in the window of their apartment. He also saw that a window screen was lying in the courtyard below their third-floor window.

Mr. Gray saw defendant had his left hand on Karen's neck, and, from his vantage point, it appeared defendant was holding Karen about six inches out of the window. Mr. Gray feared defendant was going to push Karen out of the window completely. He

---

[1]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[2]    Mr. Gray did not personally know defendant or Karen, but recognized them as neighbors.

telephoned the apartment manager to report the incident and obtain their apartment number, and then called 911.

John Lamberti, an officer with the Los Angeles Police Department, received the dispatch call to report to the apartment building based on Mr. Gray's 911 call. Officer Lamberti and his partner, who had been on patrol, reported to the apartment building and immediately went upstairs to apartment 310.

Karen answered their knock at the door, thanked them for coming, pointed at defendant who was lying on a bed in the front room and said " '[h]e choked me.' " Officer Lamberti saw the window in the apartment was missing a screen, which was later found in the courtyard below the window. Officer Lamberti spoke with Karen about what had happened, and she showed him a red mark on her neck and a scratch on her arm. She said she received those injuries from defendant when he tried to choke her and she tried to pull away. Officer Lamberti took photographs of both injuries. Karen denied wanting any medical assistance. Officer Lamberti placed defendant under arrest.

Defendant was charged by information with one count of inflicting corporal injury on a cohabitant. (Pen. Code, § 273.5, subd. (a).) It was further alleged defendant had suffered a prior strike for second degree murder. (§ 667, subds. (b)-(i), § 1170.12, subds. (a)-(d).) Defendant pled not guilty and denied the special allegation.

In August 2012, defendant moved, pursuant to *Faretta v. California* (1975) 422 U.S. 806, to represent himself. Defendant signed a *Faretta* waiver form and the court made the requisite findings allowing defendant to represent himself. Standby counsel was appointed.

During pretrial proceedings on November 15, 2012, defendant asked the court to consider his request to strike his prior conviction pursuant to *Romero*. The court stated defendant should have filed a written motion, but that if defendant wanted the court to consider his request, he could make a request of the trial court once he was assigned to a trial department. The court then told defendant: "In light of the charges I think you [have] an uphill battle. . . . [But] [y]ou can certainly make your motion, sir."

3

The next day, the case was sent to the trial department. Before the prospective jurors were called in, the court asked if there was a disposition in the case. Defendant told the court he was unwilling to accept the prosecution's offer of a plea to four years. The court responded: "That is certainly your right, sir. If it doesn't go your way at trial the maximum sentence you could serve is eight years in state prison. You have a fairly lengthy record. . . . [¶] . . . [¶] . . . If it doesn't go your way chances are pretty good you are going to be up to or make maybe the maximum sentence. I want to be clear to you." Defendant then asked whether the court would hear his *Romero* motion. The court responded: "That motion is not timely filed. That must be filed ten days before. We are here for trial."

The case proceeded to trial. Mr. Gray and Officer Lamberti testified to the facts set forth above. Mr. Gray's 911 call was played for the jury. Mr. Gray reported to the 911 operator that "one of [his] neighbors is choking his, looks like his girlfriend, and holding her partially out the window and they live on the third floor." The photographs Officer Lamberti took of Karen's injuries were also received as exhibits.

Before Karen testified in the prosecution's case-in-chief, the court entertained argument about matters of possible impeachment. The court ruled on defendant's motion in limine to exclude his criminal history in the prosecution's case-in-chief. Defendant indicated his intent not to testify, and the court indicated that if he changed his mind and decided to testify, the prosecution could impeach with his 1982 prior murder conviction, but could not raise a 2001 arrest arising from a domestic dispute which did not result in a conviction.

As for Karen, the court ruled that "none of the criminal background in her case rises to the level of moral turpitude." The court instructed defendant that he could not ask about Karen's "misdemeanor convictions for drug offenses or prostitution." Defendant responded that Karen "is a drug addict and she is delusional. It plays an important part of what she is saying here on the charge." The court told defendant he was free to ask Karen about whether she was under the influence of drugs or alcohol at the time of the offense, but could not impeach with the convictions.

4

Karen testified to the events that transpired on March 6, 2012. She explained she and defendant had been living together a few months and that she was scared of him because he was abusive. She admitted they were both yelling at each other on March 6 for awhile, at least 30 minutes, when defendant charged at her and pushed her toward the window. Karen said he pushed her up against the window and the screen fell out. Defendant tried to choke her and was pushing against her so that her head and neck were six inches to a foot out of the window. She was afraid he was violent enough to throw her out of the window.

During cross-examination, defendant asked numerous questions directed to Karen's alleged drug use and mental health issues, many of which were argumentative and consisted of testimony by defendant. Objections were sustained and a brief recess was taken outside the presence of the jury. The court reminded defendant of the scope of relevant testimony and that he had to comply with the rules of evidence.

When cross-examination of Karen resumed, defendant inquired several times if she caused the injuries to her arm and neck that she had showed Officer Lamberti on March 6. Karen denied she caused the injuries herself. She denied that she knocked the screen out of the window, and reiterated it happened when "you grabbed me by my throat and tried to push me out the window." Defendant asked Karen about whether she was "high" on March 6, and she conceded that she was. Defendant continued on with a fairly lengthy cross-examination focused largely on Karen's alleged motives for testifying against him.

The jury found defendant guilty as charged. Defendant waived his right to a jury trial on the bifurcated prior allegation.

On January 30, 2013, a day before the court trial on the prior strike, defendant filed a written motion requesting the court to strike his prior strike. The sentencing memorandum filed by the prosecutor several weeks earlier included opposition to defendant's request to strike the strike. The court denied defendant's motion, stating it was not "timely filed."

The prosecution proceeded to prove up the prior strike through the presentation of a fingerprint expert. The court found true that defendant had suffered the prior conviction for murder in 1982 in the state of Minnesota. Defendant was sentenced to a total state prison term of eight years, consisting of the upper term of four years for the offense, doubled due to the prior strike. Defendant was awarded 586 days of presentence custody credits, and ordered to pay various fines and fees.

This appeal followed.

## DISCUSSION

### 1. The Exclusion of Impeachment Evidence

Defendant contends the court abused its discretion in refusing to allow the victim, Karen, to be impeached with evidence of former misdemeanor convictions for prostitution. The record is unclear whether there were two or three convictions, and the record does not indicate how old those convictions were. Defendant argues the court erred in finding the convictions were not crimes of moral turpitude, and therefore not admissible. Defendant contends the court's error was an abuse of discretion. We are not persuaded.

"A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Respondent argues defendant forfeited the claimed evidentiary error by failing to object to the court's ruling or making any offer of proof as to how the victim's conviction for prostitution was relevant to the truth of her testimony against defendant. (See *People v. Alvarez* (1996) 14 Cal.4th 155, 200 [finding the defendant forfeited appellate challenge to court's exclusion of prior misdemeanor prostitution convictions for impeachment where defendant did not offer any argument as to how "such evidence would have been relevant for impeachment"].) The record here demonstrates defendant was focused on seeking to impeach Karen's testimony with evidence she regularly used drugs and had

6

mental health issues. At no time did defendant ever make even a basic argument to explain how Karen's misdemeanor convictions for prostitution reflected on her veracity.

We find defendant has forfeited the claim. Even if he had not forfeited the claim, and even if we were to assume, solely for the sake of argument, that the impeachment was improperly excluded (and, to be clear, we do not find any such error), the claimed error was harmless beyond a reasonable doubt.

The Supreme Court has explained: "Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.' [Citation.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623, quoting *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) "A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*Id*. at pp. 623-624.)

The record contains solid, *uncontradicted* corroboration of Karen's testimony about the incident from both the neighbor, Mr. Gray, and Officer Lamberti. Mr. Gray said after hearing a loud, profane argument for almost an hour, he heard a loud noise and then saw defendant and Karen in the window of their third-story apartment. He said defendant's hand was around Karen's neck and he was holding her out the window. His own account of the incident was corroborated by the tape of his 911 call which was played for the jury. Officer Lamberti testified to the statement of events he received from Karen about what happened, which was consistent with her testimony, as well as Mr. Gray's testimony. Officer Lamberti also saw the injuries on Karen's arm and neck and documented them, and those photographs were received into evidence.

Further, defendant was given wide latitude to cross-examine Karen about her drug use on the day of the incident and alleged inconsistencies in her testimony. Defendant was able to obtain Karen's admission she was "high" on March 6. Given the state of the record, it is inconceivable that the jury would have received a "significantly different

7

impression" of Karen's credibility had it heard she had suffered prior misdemeanor convictions for prostitution.

## 2.     Denial of the *Romero* Motion

Defendant contends the trial court refused to consider his *Romero* motion on the grounds it was untimely, which he argues was the equivalent of the court finding it lacked jurisdiction to dismiss the strike, and that he is therefore entitled to a remand for consideration of his motion on the merits and resentencing. We are not persuaded.

We review a court's ruling on a *Romero* motion under the deferential abuse of discretion standard. (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*); accord, *People v. Carmony* (2004) 33 Cal.4th 367, 375-376 (*Carmony*) [holding abuse of discretion standard also applies to review of a trial court's decision declining to strike a prior strike].) A trial court is "presumed to have acted to achieve legitimate sentencing objectives" and the decision to impose a particular sentence will not be set aside unless an affirmative showing is made that the sentence is irrational or arbitrary. (*Carmony,* at pp. 376-377.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

In exercising its discretion whether to strike a prior strike allegation, the court considers various factors, including the nature and circumstances of the defendant's present felonies and prior convictions, the defendant's background, character, and prospects, and whether the defendant may properly be deemed outside the spirit of the Three Strikes law. (*Williams*, *supra*, 17 Cal.4th at p. 161.) At sentencing, the trial court found defendant's *Romero* motion was untimely and therefore did not weigh the *Williams* factors on the record. However, a court denying a motion to strike need not state the reasons for its denial on the record. (*Carmony*, *supra*, 33 Cal.4th at p. 376 [Penal Code section 1385 only requires trial court to state reasons for striking a strike, not for denying to strike]; see also *People v. Zichwic* (2001) 94 Cal.App.4th 944, 960.)

However, when a court denying a *Romero* motion states the reasons for its denial on the record, the court must state legally correct reasons. A motion to dismiss a prior strike may be made at any time, up to the entry of judgment. (*Romero*, *supra*, 13 Cal.4th

8

at p. 524, fn. 11; accord, 5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 475, p. 740.)  Nonetheless, we disagree the court's statement that the motion was untimely somehow suggests that the court thought it lacked the authority to rule on the merits of the motion.  There is simply nothing in the record to suggest that, having heard defendant's various motions to strike the strike and received the prosecution's sentencing memorandum which included an opposition to the *Romero* motion, the court (a veteran criminal jurist) was unaware it had discretion to strike the strike.

Furthermore, insofar as the court erred in denying the motion as untimely, defendant has not shown prejudice or any basis for a remand for resentencing.  "*Romero* establishes that where the record *affirmatively* discloses that the trial court *misunderstood* the scope of its discretion, remand to the trial court is required to permit that court to impose sentence with full awareness of its discretion as clarified in *Romero*.  (*Romero*, *supra*, 13 Cal.4th at p. 530, fn. 13.)  *Romero* also clearly holds that remand is not required where the trial court's comments indicate that even if it had authority to strike a prior felony conviction allegation, it would decline to do so.  (*Ibid*.)"  (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944.)

Nothing in the court's remarks or decision supports a determination the court was inclined to find defendant outside the spirit of Three Strikes law.  As the trial court stated in pretrial proceedings, defendant had a lengthy criminal record, and the trial court underscored that point to defendant in an effort to make him understand that if he declined the plea offer and went to trial, he risked being sentenced to prison for eight years.  More to the point, we find it is manifestly clear that nothing about defendant's record, background, character, and prospects remotely suggests that any trial judge might find he falls outside the letter or spirit of the Three Strikes law.  Defendant's probation report details a criminal record spanning more than three decades, across four states, and consisting of both felony and misdemeanor convictions, including drug offenses, unlawful possession of a weapon, driving with a suspended license and evading arrest. The court chose the upper term on the infliction of corporal injury count.  The prior strike

was a murder conviction arising from the death of a woman who also was in a domestic relationship with defendant, like the victim in the present case.

The Three Strikes law creates a sentencing norm and "carefully circumscribes the trial court's power to depart from this norm." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) "[T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid*.) Defendant has failed to make any showing that the trial court might have concluded that his was an "extraordinary" case warranting the striking of defendant's prior murder conviction. (*Id*. at. pp. 378-379.)

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.


We concur:


BIGELOW, P. J.


RUBIN, J.

10