Filed 1/12/15  P. v. Hill CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KENNETH DEWYANE HILL, et al.,<br><br>Defendant and Appellant. | B251245<br><br>(Los Angeles County<br>Super. Ct. No. LA073059) |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael K. Kellogg, Judge.  Affirmed as modified as to Defendant and Appellant Kenneth Hill.  Affirmed as to Defendant and Appellant Cynthia Vasquez.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant Kenneth Hill.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant Cynthia Vasquez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Kenneth Hill and Cynthia Vasquez were convicted of attempted first degree residential burglary (Pen.[1] Code, §§ 664, 459).  On appeal, Hill argues that the evidence was insufficient to support the conviction; that the trial court erred in refusing to instruct the jury on the crime of trespass as a lesser included offense; that the court erred when it failed to inquire of the prosecutor about instructing the jury on trespass; and that he received insufficient presentence custody credits.  Vasquez also argues that the trial court erred in denying the request to instruct the jury on trespass; that the court abused its discretion in failing to strike her prior strike conviction; and that her prison term constitutes cruel and unusual punishment.  We modify Hill's presentence custody credit award but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 2013, Thomas Ryan watched through his kitchen window as Hill and Vasquez approached a house across the street from his home.  Vasquez, dressed in jeans and a red hooded sweatshirt and holding a white bag, was standing on the front porch; although Ryan could not see her hands, it appeared to him that she had opened and looked in the mailbox next to the front door.  Vasquez then walked down the driveway to where Hill was standing and spoke with him.  Hill was wearing sweat pants and a gray hooded sweatshirt.

Ryan watched as the two looked around and pulled the hoods on their sweatshirts up over their heads.  Vasquez walked two houses down to the corner, and Hill jumped over the fence of the house across the street and into the backyard.  Ryan, believing that he might be seeing a burglary in progress, told his wife what he had just seen and they discussed whether to call the police.  Ryan picked up his cell phone, walked outside, began recording, and approached Vasquez.  When he greeted her with his phone visible, she "jumped up and took off" in the opposite direction.  Ryan told her, "You better get on the phone or do whatever you have to do.  Tell him—tell him to get out of the house now."  He tried to maneuver so he could film her face again, and he followed her as she

---

**1**     Unless otherwise indicated, all further statutory references are to the Penal Code.

ran down the street. Ryan yelled, "I have you on video. Tell him to get out of the house now. The police are on their way." Vasquez ran toward the house, yelling to Hill to get out. Ryan ran after her, continuing to film. Ryan's wife called 911.

Hill jumped the fence and began running down the street. Ryan saw that he had one hand in his pocket, which made him concerned that Hill either had a weapon or had taken something from the home. Ryan, now filming Hill, yelled at him that the police were coming and to drop what was in his hand.

Ryan slowed down as Hill and Vasquez ran away. He returned to his home and waited for the police to arrive. As he waited, however, Ryan began to wonder whether Hill and Vasquez had headed to a nearby bus station. He drove down to the bus station, where he saw Vasquez, no longer wearing her red hooded sweatshirt, sitting on a bench. Ryan then observed Hill crouched in the bushes, and watched as Hill removed his sweatshirt and sweat pants, revealing a t-shirt and shorts underneath. Ryan parked where he could see the two and called 911.

While Ryan watched, Hill and Vasquez boarded a bus. Then, a transit police officer began escorting people off the bus who wore clothing like the suspects had been wearing. The 911 operator instructed Ryan to go to the bus station, where he identified Vasquez and Hill.

When Jamie Cantor, the owner of the home that Vasquez and Hill had targeted, arrived home, she found that her sliding screen window to the backyard, which had been closed when she left home, was now open. The screen was off its track and the frame was bent; it could not be closed. The gate to her backyard dog run, which was ordinarily held closed with a padlock passed through the gate but not locked, was now wide open, and the padlock was on the grass next to her rose bushes. The weather-stripping around the back door frame was damaged in the area of the deadbolt.

Vasquez and Hill were charged with attempted residential burglary. Both defendants were alleged to have prior convictions and prior prison terms for the purposes of sentence enhancements.

3

The two defendants were tried together by jury. At trial, Ryan testified to the events of January 14, 2013; the jury also saw his cell phone footage and security camera footage from the bus station. Vasquez requested that the jury be instructed on the lesser related offense of trespass, but the trial court denied the request.

The jury convicted Hill and Vasquez of attempted residential burglary. Vasquez and Hill both admitted their prior convictions. Both requested that their prior strikes be stricken, and in each case the court refused. Hill was sentenced to six years for the attempted burglary, calculated by dividing the upper term for burglary in half because the offense was an attempt (§ 664, subd. (a)), then doubling the resultant three years under the Three Strikes Law, sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d).[2] The court imposed an additional consecutive five-year sentence enhancement under section 667, subdivision (a)(1) Vasquez was sentenced to four years for the attempted burglary, calculated by halving the middle term of four years because the offense was an attempt, then doubling that two-year term pursuant to the Three Strikes Law.[3] The court also imposed a five-year sentence enhancement pursuant to section 667, subd. (a)(1). Both appeal.

---

[2] The abstract of judgment, while correctly stating the final six-year term, represents Hill's sentence as a upper term of six years rather than a term of three years doubled pursuant to the Three Strikes Law. Where there is a discrepancy between the court's oral pronouncement and the minute order or abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)

[3] The abstract of judgment for Vasquez is inconsistent with the sentence as orally pronounced because it represents her sentence on the attempted burglary as a middle term sentence of four years rather than as a two-year term doubled because of a prior strike. The court's oral pronouncement of sentence is controlling. (*People v. Mitchell*, *supra*, 26 Cal.4th at pp. 185-186.)

4

## DISCUSSION

### I.  Sufficiency of the Evidence to Support Conviction

Hill argues that the evidence was insufficient to sustain the attempted residential burglary conviction because there was insufficient evidence that he had the specific intent to steal and take away someone else's property.  (CALJIC No. 14.50.)  When reviewing a claim of insufficient evidence, an appellate court must determine, in light of the entire record, whether substantial evidence supports the trier of fact's conclusion.  (*People v. Hughes* (2002) 27 Cal.4th 287, 370.)  Substantial evidence is evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense.  (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)  The reviewing court presumes every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  (*Ibid*.)  The standard of review is the same regardless whether the evidence is circumstantial or direct.  (*People v. Stanley* (1995) 10 Cal.4th 764, 792.)  Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his or her guilt beyond a reasonable doubt.  (*Id*. at p. 793.)  Moreover, "the testimony of a single witness is sufficient to uphold the judgment even if it is contradicted by other evidence, inconsistent or false as to other portions."  (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221; see also Evid. Code, § 411.)

Here, there was sufficient circumstantial and direct evidence to support the inference that Hill attempted to enter the Cantor home with the specific intent to commit theft.  Evidence was presented to the jury that the incident began with Hill standing as a lookout on the sidewalk while Vasquez knocked on the door to determine whether anyone was at home.  When it appeared that the house was empty, Hill and Vasquez had a discussion, simultaneously raised their sweatshirt hoods over their heads, and headed off in different directions.  Hill jumped over a high fence and entered the backyard, where he was not visible for several minutes.  Although the evidence relating to the damage to Cantor's home was contested, the evidence permitted the conclusion that Hill

5

attempted to enter the house through the sliding glass window or door and that he opened and bent the screen door in the process. The evidence also permitted the conclusion that Hill next attempted to enter through the house's back door, removing the unlocked padlock from the gate to the dog run, and then approaching the back door, tearing the weather stripping near the lock. The evidence also showed that Hill fled when Vasquez called out to him, that he jumped over the fence again, fled on foot through the neighborhood to a bus stop, and that he crouched in the bushes attempting to change his appearance by removing the clothes he had been wearing. All of this evidence was sufficient to permit the jury to infer that Vasquez and Hill were viewing Cantor's house for a burglary with the initial steps of knocking on the door, putting their hoods on to escape possible identification, and having Vasquez act as a lookout while Hill jumped the tall fence. It was also reasonable for the jury to infer that the moving of the screen, opening of the dog run gate, and the cutting of the weather stripping near the lock of the back door were all done to gain entry into the house to perpetrate a theft. Moreover, Hill's flight from the scene, concealment in bushes and discarding of clothing, and then his entry on a bus in an attempt to avoid apprehension all tend to reveal his consciousness of guilt. (See *In re Anthony M.* (1981) 116 Cal.App.3d 491, 500-501 [unexplained flight from burglary scene implies entry with unlawful intent].)

On appeal, Hill's counsel puts forth a theory that Hill and Vasquez were at the Cantor house to "spice[] up their sex lives." Perhaps the plan was for Hill to "voyeuristically peer at a woman in a state of undress," or any woman at all. "Maybe," Hill's counsel proposes, "he masturbates, knowing Vasquez is waiting patiently outside the property, thinking about what [Hill] is doing. Then after watching for awhile [*sic*], they go off together to have sex." He also suggests that maybe Vasquez and Hill were going to be intimate in the backyard, or that perhaps Vasquez and Hill had argued and that Hill threw Vasquez's phone into the backyard, leading to the need to retrieve it. None of these theories is consistent with the evidence of attempted entry into the house. More importantly, however, if the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances

6

might also reasonably be reconciled with a contrary finding. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) Because the evidence supported an inference that Hill attempted a residential burglary, the conviction is supported by substantial evidence.

## II.     Failure to Instruct on Crime of Trespass

Hill contends that the trial court erred by not instructing the jury on the crime of trespass because it was a lesser included offense of burglary under the accusatory pleading test. Vasquez argues that the trial court erred in denying her request to instruct the jurors on trespass as a lesser included offense of attempted burglary, asserting that under both the elements and accusatory pleading tests, trespass was a lesser included offense of attempted burglary. We review claims that a trial court failed to instruct on a lesser included offense de novo (*People v. Waidla* (2000) 22 Cal.4th 690, 733), and find no error here.

A trial court has a sua sponte duty to instruct on necessarily included lesser offenses if there is substantial evidence that the defendant is guilty only of the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 118 (*Birks*).) In contrast, "[a] defendant has no right to instructions on lesser related offenses, even if he or she requests the instruction and it would have been supported by substantial evidence, because California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties." (*People v. Jennings* (2010) 50 Cal.4th 616, 668.)

The California Supreme Court has held repeatedly that trespass is a lesser related offense, not a lesser included offense, of burglary. (*People v. Foster* (2010) 50 Cal.4th 1301, 1343; *People v. Taylor* (2010) 48 Cal.4th 574, 622; *Birks*, *supra*, 19 Cal.4th 108, 118, fn. 8, 137.) We are bound to follow these decisions (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), find no principled basis for distinguishing between burglary and attempted burglary for the purposes of lesser related or included offenses, and conclude that the trial court did not err in refusing the requested instruction.

7

### III. Failure to Inquire Concerning Requested Instruction

As an alternative to his contention that the trial court was required to instruct the jury sua sponte on trespass, Hill argues that the trial court was obligated to "ascertain if the prosecutor would agree or had objections to the jury being instructed on the less[e]r related offense of trespass." Hill notes that the California Supreme Court in *Birks* provided that although there was no requirement that the jury be instructed on lesser related offenses, the parties could agree to have the jury so instructed: "[O]ur decision does not foreclose the parties from agreeing that the defendant may be convicted of a lesser offense not necessarily included in the original charge. When the parties consent to such a procedure, with or without formal amendment of the pleadings, neither can claim unfairness, and the prosecution's role in determining the charges is not improperly compromised." (*Birks*, *supra*, 19 Cal.4th at p. 136, fn. 19.) *Birks*, however, imposes no responsibility on the trial court to determine whether the prosecutor would agree to the defendant's desired lesser related offenses. Hill offers no other authority or argument to support his claim that the court had any such obligation, nor have we found any no decisional or statutory authority supporting his contention. We find no error here.

### IV. Hill's Custody Credits

As noted by both Hill and the Attorney General, Hill's presentence custody credits were incorrectly calculated. First, Hill was awarded 219 days of actual credit, although the records indicate that he served 220 days prior to sentencing. Also, he received 219 days of conduct credits, but under Penal Code section 4019, subdivision (f), he was entitled to 220 days of conduct credits. We modify the judgment to reflect two additional days of presentence custody credits.

### V. Vasquez's Sentence

Vasquez asserts that the trial court abused its discretion when it denied her motion to strike her prior conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th

8

497 for the purposes of applying the Three Strikes Law, sections 667, subdivisions (b)-(i) and 1170.12, subdivisions (a)-(d)).**4** "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) We review rulings on motions to strike prior convictions for an abuse of discretion. (*Id.* at p. 162.)

Vasquez argues that she presented substantial mitigating factors that should have removed her from the spirit of the Three Strikes Law: Hill abused her; she was coerced

---

**4**      Hill purported in his opening brief to "join[] in all issues not raised by himself, but raised by co-appellant Vasquez, which may accrue to appellant's benefit."  It is unclear whether Hill intended his joinder to extend to the denial of his *Romero* motion or to a challenge of the court's discretionary sentencing decision.  Neither matter is suited to a blanket joinder unaccompanied by particularized argument, for the highly individualized nature of an appeal of a *Romero* review turns on an individual's criminal offense and history as well as the particulars of his or her background, character, and prospects, and the court's sentencing decision is based on its assessment of the offense and particularized factors in aggravation or mitigation.  "Appellate counsel for the party purporting to join some or all of the claims raised by another are obligated to thoughtfully assess whether such joinder is proper as to the specific claims and, if necessary, to provide particularized argument in support of his or her client's ability to seek relief on that ground.  If a party's briefs do not provide legal argument and citation to authority on each point raised, '"the court may treat it as waived, and pass it without consideration. [Citations.]"' [Citation.]  'Joinder may be broadly permitted [citation], but each appellant has the burden of demonstrating error and prejudice [citations].' [Citation.]" (*People v. Bryant* (2014) 60 Cal.4th 335, 363-364.)  To the extent Hill's joinder was an attempt to raise the *Romero* issue or to challenge his sentence, his reliance solely on Vasquez's arguments and reasoning is insufficient to satisfy his burden on appeal. (*People v. Nero* (2010) 181 Cal.App.4th 504, 510, fn. 11 (*Nero*).)  We therefore consider these issues only as to Vasquez. (*Ibid.*)

into participating in both the prior and the instant offenses; her conduct was minimal, as she was a lookout; she exercised caution to ensure that no one was home; she had been law-abiding until she came under the influence of Hill at age 17 (she was now 22); Hill had encouraged her to use methamphetamine; she had been sentenced to a more severe sentence than her codefendant in her prior burglary; and she was pregnant at the time of sentencing.

At the sentencing hearing, the court confirmed it had read Vasquez's *Romero* motion and all of the attachments. Defense counsel submitted on the sentencing memorandum. The prosecutor reminded the court that Vasquez's strike was recent and for the same conduct as the present offense, then submitted.

The court denied Vasquez's motion to strike her prior conviction. First, the court noted that Vasquez was already on parole for a recent, very similar crime. In the prior burglary, which also involved both Hill and Vasquez, the court noted that "Ms. Vasquez's behavior was more egregious than Mr. Hill's. I agree with the sentencing as it was imposed and that prior conviction based on her behavior and the use of the vehicle that could have had additional charges that could have been filed, could have been held to answer, and more likely than not could have been found guilty during the trial if that matter had proceeded with additional charges." The power to strike a strike, the court observed, is "is for those folks who make mistakes in their life. And if a mistake could be made, it's not to be followed by an identical mistake." With Vasquez's continued involvement in burglaries with Hill, and looking at the two offenses, the court concluded there was no reason to find Vasquez outside the Three Strikes Law: "And in this particular case we've got [another burglary offense under Penal Code section] 459, her involvement with the same defendant that was in the prior conviction, Mr. Hill. Her posturing and position in this case was close to in the absence of a vehicle because the previous case there was an escape car that was used and people that were chasing are being chased. [¶] So under those circumstances, the *Romero*'s denied." The court expressed its belief that the general public was unaware of how unsuccessful the

10

monitoring of individuals on parole actually was, and then concluded, "So based on the fact that it's identical conduct, residential burglaries, the *Romero*'s denied."

The record shows that the trial court was aware of its discretion under section 1385 and considered all the relevant factors, including the arguments presented by Vasquez in connection with her request that the trial court strike her prior conviction. Ultimately, the trial court concluded that Vasquez was not outside the spirit of the Three Strikes Law. There was no abuse of discretion in this conclusion. In 2010, when she was 19 years old, Vasquez was convicted of burglary in violation of section 459. At the time Vasquez committed the current crime, she was on parole for that burglary. In the instant case, Vasquez again attempted to commit burglary with the same partner. Given that Vasquez was essentially repeating her criminal conduct, attempting to commit residential burglary even as she was already on parole for burglary, it was not unreasonable for the trial court to conclude that she was within the spirit of the Three Strikes scheme. Although Vasquez interprets the court's comments as "failing to consider any mitigation and . . . relying solely on the factor of the prior conviction to deny striking the prior," we understand the court's discussion as reflecting its conclusion that nothing about Vasquez or the offenses suggested she should be deemed "outside the scheme's spirit, in whole or in part, and hence should be treated as though [s]he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

Vasquez discusses battered woman syndrome at length and says that the "court should have given some weight to the fact that appellant was a battered women [*sic*] when she engaged in the charged criminal conduct." This issue was discussed at the sentencing hearing not in terms of the *Romero* motion but with respect to the actual sentence. Vasquez presented some evidence of abuse: letters written by her supporters alleging abuse, a medical record pertaining to injuries attributed to Hill's abuse, and an unsigned declaration by Vasquez in support of a request for a temporary restraining order in which she had alleged that he was abusive. The trial court considered this evidence but did not find it convincing in light of the visual evidence that Vasquez showed no evidence of injuries soon after an alleged beating and that she continued to participate in

11

what the court concluded was a burglary team. Vasquez has not demonstrated any abuse of discretion. "[A]n appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Vasquez also repeatedly criticizes the trial court for not finding sentencing factors in mitigation, and she asserts that the court abused its discretion "by failing to consider any mitigation" and failing "to make a careful, reasoned, and equitable sentencing decision." Although it is unclear the extent to which Vasquez intends to raise this issue as a separate issue rather than considering it as a reason the prior strike should have been stricken, to the extent Vasquez intends to claim that the trial court abused its discretion when it imposed the middle term sentence, the record does not support her assertion. Whether to impose the upper, middle, or lower term sentence is within the discretion of the trial court. (Pen. Code, § 1170, subd. (b).) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) On appeal, we may not substitute our judgment of the relative weights of aggravating and mitigating factors properly considered by the trial court in imposing sentence. (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 961.) In the absence of a showing that a sentencing decision was irrational or arbitrary, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on appellate review. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*).)

Here, the court commented extensively on the reasons for its sentencing decision. It addressed the argument set forth above that Vasquez was suffering from battered

12

women's syndrome; it expressed its impression based on the evidence that Vasquez and Hill were operating as a burglary team; it discussed the impact of the crime on the victim; it considered Vasquez's personal responsibility in the offense, interpreting her movement down the street as "a calculated act in getting away from being observed in front of the house"; and it discussed the fact that Vasquez was on parole at the time of the offense. The court expressed that it did not find anything to consider in mitigation: the court rejected her gender and her pregnancy as mitigators and said it did not know whether Hill was the primary actor or whether Hill was abusive. The court rejected the idea of a suspended sentence, calling such a sentence "a slap in the face of the court system" and asking, "Why would you deserve a suspended sentence when you can't even make it on parole?" The court advised the parties that it had reviewed the file from Vasquez's prior offense so that it could "see exactly what the circumstances were" behind her plea in that matter, and in its review, "I did see why they imposed the four years" in the prior case.

Ultimately, the court imposed the middle term sentence because as the lookout, Vasquez was less involved in the offense than Hill. While Vasquez may be dissatisfied with her middle term sentence, the record reflects that the court made a careful, reasoned, and equitable sentence based on an individualized consideration of Vasquez, her offense, and the public interest. Vasquez has not shown that the sentence was "so irrational or arbitrary that no reasonable person could agree with it" (*Carmony*, *supra*, 33 Cal.4th at p. 377), and she has therefore not demonstrated any abuse of discretion here.

## VI. Vasquez's Claim of Cruel and Unusual Punishment

For a punishment to be cruel and unusual under the Eighth Amendment, it must be grossly disproportionate to the offender and offense. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1001.) The California Constitution prohibits any sentence that is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) The California Supreme Court has instructed that, when reviewing a claim of cruel or unusual punishment, courts should examine the nature of the offense and

13

offender, compare the punishment with the penalty for more serious crimes in the same jurisdiction, and measure the punishment to the penalty for the same offense in different jurisdictions. (*People v. Dennis* (1998) 17 Cal.4th 468, 511; *In re Lynch*, at pp. 425-429.) Although Vasquez argues that her sentence is unconstitutional,[5] she performs none of these analyses. Instead, she flatly asserts that her sentence is unconstitutional because "A second strike sentence of nine years in prison for this 22 year old pregnant woman shocks the conscience." A second strike sentence of nine years for an attempted residential burglary committed by an adult who was at the time on parole for a prior burglary does not on its face "shock[] the conscience" or "offend[] fundamental notions of human dignity." (*In re Lynch*, at p. 424.)

Next, Vasquez argues that the court's response to her claim that she was suffering from battered women's syndrome was "shocking." It is unclear how the court's evaluation of the limited evidence presented by Vasquez on the issue of abuse relates to her constitutional argument of cruel and/or unusual punishment, as this is at core a complaint that the court did not credit her evidence that she was suffering from battered women's syndrome. Specifically, she complains that the court's comments "expressed an opinion by the court that appellant lied in her declaration." The court did not opine that Vasquez was lying, but the court observed that the filmed footage of Vasquez seemed at odds with her claim to have been beaten recently by Hill. Ultimately, Vasquez presented sparse evidence to support her claim for purposes of mitigation that she was a battered woman, and the court, upon review of that evidence, did not conclude that she was experiencing battered women's syndrome. When reviewing a claim of cruel and/or unusual punishment, the underlying disputed facts must be viewed in the light most favorable to the judgment. (*People v. Abundio* (2013) 221 Cal.App.4th 1211, 1217.) We find no error here.

---

**5**     All the arguments raised by Vasquez regarding cruel and/or unusual punishment are specific to her personal circumstances. To the extent Hill's joinder was intended to raise the cruel and/or unusual punishment issue on his own behalf, his reliance solely on Vasquez's arguments and reasoning is insufficient to satisfy his burden on appeal. (*Nero*, *supra*, 181 Cal.App.4th at p. 510, fn. 11.)

Vasquez then argues that the court's comments at sentencing violated the California Code of Judicial Ethics, Canon 3(B)(5), which requires that judges perform their judicial duties without bias or prejudice and without engaging in speech, gestures, or other conduct that would reasonably be perceived as bias, prejudice, or sexual harassment. We have reviewed the transcript of the sentencing hearing in its entirety and find no evidence of bias or prejudice. The court simply did not accept Vasquez's contention that she was suffering from battered women's syndrome, although it did not exclude the possibility that Hill may have been abusive or jealous. The court did make extraneous comments during sentencing, some of which were about his experience with relationships and what he surmised might have been happening in the relationship between Hill and Vasquez. Specifically, the trial court stated that it would not surprise him if Hill were "overbearing or protective or jealous" and that Hill may have been jealous "if there were other people involved in a meretricious relationship." The court's comments were based upon Vasquez's description in her unsigned declaration of being beaten by Hill: she stated that Hill looked through her cell phone; beat her; looked at her phone again; called one of her male friends; and then, even more upset, beat her again. Vasquez claims that the court's comments are reminiscent of sentiments that "a man has the right to beat his woman, who dares to look at another man." The court said nothing of the sort, and made no statement that suggested that Hill was justified in beating Vasquez. Vasquez also faults the trial court for chastising her for associating with Hill, arguing that this minimized Hill's conduct and "negate[d] the expert evidence that a battered woman has few choices." Here, the court observed that Vasquez had family supporting her, and she had a chance to turn her life around while she was on parole, but she had not done so. The court said, "You can blame Mr. Hill for a lot, but sooner or later your point of blame has to come back to yourself for the drug use, for your choice to associate with Mr. Hill." This comment did not minimize or justify Hill's violent conduct; it was consistent with and simply reflected the court's conclusion that Vasquez was not suffering from battered women's syndrome and was personally responsible for her own decisions and conduct. Moreover, Vasquez presented no expert evidence about

15

battered women's syndrome, so the court's comments did not "negate" any evidence presented in this matter. Vasquez has not demonstrated any bias or prejudice on the part of the court, nor has she with this argument demonstrated that her sentence amounted to cruel and/or unusual punishment.

Finally, Vasquez argues that the court (1) failed to fulfill its responsibility to make factual determinations at sentencing and (2) rejected her mitigation evidence when it said it did not know whether Hill was the "mover and shaker" in the offense or whether Hill was abusive. The court fulfilled its obligations at sentencing. While the court did at one point profess not to know who was the ringleader in this offense, ultimately the court did determine the sentence based upon its conclusion that Hill was more involved and more culpable for the crime. The court imposed the middle term sentence for Vasquez, having already imposed the upper term on Hill, and explained that it "differed the sentencing based on your involvement in the case." As for the court's conclusion that it did not know whether Hill was abusive, the court did not need to answer that question in order to sentence Vasquez. What the court needed to determine was whether Vasquez was suffering from battered women's syndrome or was otherwise under Hill's influence and control such that this should affect her sentence, and the court did resolve that question, albeit differently than Vasquez believes it should have resolved it. As for Vasquez's argument that the court rejected her mitigation evidence, while the trial court did not find factors in mitigation, we have already found that there was no abuse of discretion in the court's sentencing decision. Vasquez has not established error or a constitutionally unjust sentence with these arguments.

**DISPOSITION**

With respect to appellant Kenneth Hill, the judgment is modified to reflect 220 days of actual custody credits in addition to presentence credits in the amount of 220 days, for a total of 440 days of presentence custody credits. The superior court is directed to prepare a corrected abstract of judgment for Hill that reflects both the correct calculation of the term of imprisonment for the attempted burglary and the 440 days of

16

presentence custody credits, and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation. With respect to appellant Cynthia Vasquez, the superior court is directed to prepare a corrected abstract of judgment reflecting her sentence for attempted burglary consistent with the oral pronouncement of the court, and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgments are affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.