Filed 5/14/26  P. v. Hughey CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B342848 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA032585) |
| v. | |
| FREDDIE HUGHEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Seth P. McCutcheon and Charles Chung, Deputy Attorneys General, for Defendant and Respondent.

———————————

# INTRODUCTION

Freddie Hughey appeals the superior court's resentencing decision under Penal Code section 1172.75, which struck Hughey's four prison prior enhancements under section 667, subdivision (b).[1]  Hughey contends the court abused its discretion by declining to additionally dismiss his prior strike allegations pursuant to Penal Code section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Conviction and Sentence*

In 1998, Hughey "went into a law office, and while no one was there, took a wallet."  Hughey was convicted in 1999 by a jury of petty theft with a prior theft-related conviction (§ 666).  The jury found true that Hughey served four prior prison terms within the meaning of section 667.5, subdivision (b), and that Hughey had suffered four previous serious or violent felony convictions within the meaning of the Three Strikes law, sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d).  Hughey's four strike convictions consisted of: 1991 convictions for kidnapping (§ 207, subd. (a)) and second degree robbery (§ 211); and 1980 convictions for assault with a deadly weapon (§ 245, subd. (a)) and forcible rape (former §§ 261.2/261.3, now § 261, subd. (a)(2)).

---

[1]    Undesignated statutory references are to the Penal Code.

Hughey was sentenced to 25 years to life for a third-strike offense under the Three Strikes law, plus four years for the prison priors.

B.     *Resentencing Proceedings*

In 2022, Hughey was identified as eligible for resentencing under section 1172.75, which invalidated certain one-year prison prior enhancements under section 667.5, subdivision (b).  The court struck Hughey's four prison prior enhancements "[t]o prevent over-detention" in September 2022, reducing his sentence by four years, and indicated Hughey "is still entitled to a full-resentence, if requested, at a later date."

Hughey, through his appointed counsel, requested a full resentencing in September 2024.  Hughey argued his conduct did not fall within the spirit of the Three Strikes law and the court should dismiss his prior strikes in its discretion under section 1385.  He argued that two of his prior strikes, the kidnapping and robbery convictions, arose out of the same incident; his offenses generally stemmed from substance abuse; his present offense of petty theft was not a violent felony; his advanced age and physical disabilities decreased his risk of recidivism; his prior strikes were 33 and 44 years old; and he had participated in rehabilitative programming and avoided rule violations in prison, earning the "lowest possible" risk assessment scores.

At the time of his resentencing request, Hughey reported he was 74 years old, and "his physical condition has diminished during his period of incarceration.  He has been confined to [a] wheelchair due to constant back pain related to sciatica.  In addition, he has been diagnosed with chronic hepatitis C,

3

bilateral primary osteoarthritis of the hip, and cirrhosis of the liver." Hughey provided certificates of completion from his rehabilitative programming.

The People opposed Hughey's resentencing request, noting that Hughey was now eligible for parole and that if the court struck his prior strike offenses and imposed a determinate term as requested, Hughey would be released immediately. The People argued Hughey fell within the spirit of the Three Strikes law because his prior strike offenses were "heinous" and his criminal history was extensive, including convictions for pandering and assault with intent to commit oral copulation. The People asserted that "the fact that two of [Hughey's] strikes are from one case is ultimately immaterial," because "he also had two other strikes arising from separate cases" and "another uncharged strike . . . for assault with intent to commit forced oral copulation." The People argued there was insufficient evidence of Hughey's substance use or mental illness, and that Hughey's rehabilitative efforts, age, and disabilities were more properly considered by the parole board, which had recently denied Hughey parole.

In his reply, Hughey requested resentencing as a second strike offender.

The court heard the matter in December 2024. Hughey's counsel argued at the hearing that if Hughey were convicted of the petty theft offense "today with this same record, the maximum sentence . . . that could be imposed would be six years or [the] high term doubled."

The court stated, "This is a really difficult decision" because "from the defense perspective, this is an individual who was convicted of petty theft with a prior and has done a great deal of

4

rehabilitative programming," but "[o]n the other hand, from the prosecution's perspective, this individual's prior convictions are horrific. [¶] He has prior convictions for several violent sex offenses. [¶] He has a long criminal record. He did not do well on parole. He just kept committing crimes for decades." The court observed "it appears [Hughey] was afflicted with cannabis use disorder" and "also abused alcohol, cocaine and heroin," and he "was found not competent in 1999 due to mental health and mental illness" and had previously reported "that he hears voices, suffers from P.T.S.D., and takes . . . psychiatric medication." The court noted Hughey's elderly age and his physical condition and illnesses; that Hughey's "current offense is not serious or violent" and "the strikes . . . at this point are old;" and his risk assessments were low and "[h]e's done a large amount of rehabilitative programming." The court stated that "the nature and circumstances of the current offense . . . weighs in favor of the defendant."

But the court concluded that the "nature and circumstances of the prior convictions that constitute strikes, that weighs strongly against the defendant." The court recounted Hughey's most serious criminal history, including "tr[ying] to become a pimp for an undercover officer"; "forc[ing] [a] victim to commit oral copulation at knifepoint and then robb[ing] the victim"; and committing kidnapping and robbery and "ma[king] comments such that he was going to rape the victim" when "[h]e had just gotten out of prison five days before that." The court further considered other instances in Hughey's "extremely long criminal record," such as a juvenile adjudication for battery on a probation officer and convictions for burglary, petty theft, carrying a loaded firearm in public, loitering where children are present, receiving

5

stolen property, and being under the influence. The court stated Hughey "basically . . . [has] been in continuous custody since 1980. As soon as he gets out, he commits another violent offense. [¶] He's been committing crimes continuously since 1968 for 30 years until he was given a 25-to-life sentence. . . . He did not appear to learn anything from his time in custody [before then], especially the serious offenses where he got four years, eight years, and eleven years. [¶] He violated parole numerous times."

The court determined that "in terms of . . . the *Romero* motion," "considering the nature and circumstances of his current offense, prior convictions, and background, character, and prospects, . . . I can't say that he's outside the spirit of the Three Strikes law." The court denied Hughey's motion and resentenced him to 25 years to life pursuant to the Three Strikes law. The court also suspended Hughey's $10,000 restitution fine.

Hughey timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*
Effective 2022, Senate Bill No. 483 "retroactively invalidate[d] prison prior enhancements imposed pursuant to section 667.5, subdivision (b), except those that were based on a conviction for a sexually violent offense." (*People v. Green* (2024) 104 Cal.App.5th 365, 368 (*Green*); accord, *People v. Rogers* (2025) 108 Cal.App.5th 340, 348, fn. 5 (*Rogers*).)

Senate Bill No. 483 also added former section 1171.1, now section 1172.75, to the Penal Code (see *Green, supra,* 104 Cal.App.5th at p. 370; *Rogers, supra,* 108 Cal.App.5th at p. 348, fn. 5), "establish[ing] a mechanism to provide affected

6

defendants a remedy for those legally invalid enhancements." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 380.) Section 1172.75 requires the California Department of Corrections and Rehabilitation to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement" under section 667.5, subdivision (a). (§ 1172.75, subd. (b); see *Burgess*, at p. 380; accord, *People v. Gray* (2024) 101 Cal.App.5th 148, 163.) Once the court verifies that "the current judgment includes [such a] sentencing enhancement . . . the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c); accord, *Gray*, at p. 163; *Burgess*, at p. 380.)

In addition to striking the invalid prior prison term enhancements, section 1172.75 requires a "full resentencing," applying "the sentencing rules of the Judicial Council and . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2); see *Green*, *supra*, 104 Cal.App.5th at p. 373; accord, *People v. Garcia* (2024) 101 Cal.App.5th 848, 855 (*Garcia*).) Section 1172.75 also permits the resentencing court to "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3); accord, *People v. Dowdy* (2024) 107 Cal.App.5th 1, 7 (*Dowdy*); *Garcia*, at p. 856.)

As part of full resentencing, section 1385 permits the court to "dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).)[2] In *Romero*, *supra*, 13 Cal.4th 497, our Supreme Court held "a court may exercise the power to dismiss granted in section 1385" with respect to prior felony conviction allegations under the Three Strikes law. (*Id.* at p. 504; see *Rogers*, *supra*, 108 Cal.App.5th at p. 364 ["trial court ha[s] the authority to exercise its discretion under section 1385(a) and *Romero* to strike any or all of [a defendant's] strike priors after recalling his sentence and for the purpose of resentencing him under section 1172.75"].)

" '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be

---

[2] In 2022, the Legislature "amended section 1385 to specify mitigating circumstances that courts must consider when deciding whether to strike a sentence enhancement in the furtherance of justice." (*Dowdy, supra,* 107 Cal.App.5th at p. 9; accord, *People v. Hernandez* (2024) 103 Cal.App.5th 981, 991.) Hughey does not argue on appeal that any of the mitigating circumstances enumerated in section 1385, subdivision (c), apply to his case. (See *Dowdy,* at p. 9 ["It is well established . . . that section 1385, subdivision (c) applies by its terms to a sentence 'enhancement,' but not to a sentence derived from the alternative sentencing scheme of the Three Strikes law"].)

8

treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*); accord, *People v. Williams* (1998) 17 Cal.4th 148, 161.) The court must consider " ' "both . . . the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal." ' " (*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 375.) "[A]n appellate court may not substitute its judgment about appropriate sentencing for that of the trial court, but instead must give due regard to the discretion vested in that court. [Citations.] The appellate court can find a reversible abuse of discretion only if it concludes that no reasonable judge would have agreed with the trial court's decision. [Citations.] Unless that standard is met, the appellate court must affirm the decision, even if it ' "might have ruled differently" ' on the *Romero* motion ' "in the first instance." ' " (*People v. Dain* (2025) 18 Cal.5th 246, 258.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.] [¶] But

9

'[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)  Even so, "the abuse of discretion standard is neither 'empty' [citation] nor are all recidivists the kind of career criminals appropriately considered under that scheme.  Cumulative circumstances, including that a defendant's crimes were related to drug addiction and the defendant's criminal history did not include actual violence, may show that the defendant is outside the spirit of the Three Strikes law." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140-1141.)

B.    *The Superior Court Did Not Abuse Its Discretion By Denying Hughey's* Romero *Motion*

Hughey argues that the superior court "failed to give meaningful value to post-conviction factors akin to those set forth in Penal Code section 1172.75, subdivision [(d)](3)."  In Hughey's view, "the trial court's failure to meaningfully value those factors while placing undue emphasis on his past criminal record more than 30 years past requires reversal," and Hughey further seeks "remand with directions to explain how or why Hughey's 25 years of exemplary in-prison performance nonetheless reinforced the

trial court's original decision in 1999 to impose Three Strikes punishment."[3]

We cannot say the court abused its discretion. In its ruling, the court expressly and thoroughly weighed the relevant considerations for and against granting Hughey's *Romero* motion and acknowledged the decision was "difficult." The court specifically considered Hughey's circumstances relevant to the postconviction factors in section 1172.75, subdivision (d)(3), namely his "disciplinary record and record of rehabilitation of the defendant while incarcerated[;] evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence[;] and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." As relevant to this provision, the court noted that Hughey "has done a great deal of rehabilitative

---

[3] For the first time on reply, Hughey raises the Reform Act, which authorizes resentencing through section 1170.126 for certain defendants serving indeterminate third strike life sentences. (See *People v. Superior Court (Guevara)* (2025) 18 Cal.5th 838, 850-851.) Hughey argues he was eligible for Reform Act resentencing and the superior court failed to make findings under this statute. The record indicates that "Hughey previously petitioned for resentencing under section 1170.126" and his petition was denied. (See *Guevara,* at p. 851 ["The ameliorative provisions of the Reform Act . . . do not apply in cases in which the defendant was previously convicted of certain enumerated offenses, including those involving sexual violence . . ."].) Further, " ' "[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255.)

programming" while incarcerated and that he was in his 70s and "has a physical condition which confines him to a wheelchair," in addition to other chronic health conditions.  The court further considered Hughey had "no rules violations for force or violence in the time he's been in prison," and his risk assessments reflected the "lowest possible score."

Aside from Hughey's post-conviction circumstances, the court also considered that Hughey's current offense of conviction, petty theft with a prior, was "not serious or violent" and that his strike offenses "at this point are old."  The court recounted that Hughey had served in the military, and also had reported mental illness diagnosis, symptoms, and treatment.

Nevertheless, the court believed the circumstances of Hughey's four prior strike convictions "weigh[ed] strongly against" granting the *Romero* motion.  These convictions were serious, including repeated violent and sexual offenses, including forcible rape with great bodily injury, assault with a deadly weapon with personal infliction of great bodily injury, kidnapping, and robbery.  Regarding the strike offenses, Hughey violated probation and parole multiple times, and he committed the kidnapping and robbery just "five days" after his release from prison.

In addition to the strike offenses, Hughey's criminal history was "extremely long," and involved other violent and firearm offenses including burglary, battery, carrying a loaded firearm, and assault with intent to commit rape.  The court observed that Hughey had "been in continuous custody since 1980" and "[a]s soon as he gets out, he commits another violent offense," summarizing Hughey's record as "committing crimes continuously since 1968 for 30 years until he was given a 25-to-

life sentence in 1999." For this reason the court did not abuse its discretion by concluding that Hughey was not outside the spirit of the Three Strikes law. (See *People v. Mendoza* (2022) 74 Cal.App.5th 843, 857 [no abuse of discretion in denying *Romero* motion where "the trial court gave primary weight to Defendant's extensive criminal history" which reflected "a career criminal who is unable to remain out of prison for more than a few years at a time"]; *People v. Brugman* (2021) 62 Cal.App.5th 608, 640 ["Due to his continuous history of criminal conduct, [defendant] 'appears to be "an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed." ' "].)

Hughey contends that "[g]iven the trial court's clear focus on Hughey's record at the time his current sentence was imposed, the court[']s passing reference to the d[e ]minim[i]s nature of his current committing offense and to his efforts at rehabilitation does not support a finding of true 'weighing or balancing the pros and cons' of its sentencing discretion as envisioned by *Romero*." Hughey submits that the court "gave only lip service to [his] post-conviction in-prison performance but clearly rendered its decision on the basis of his pre-conviction behavior." In essence, Hughey does not contend the court failed to consider relevant factors but argues the court should have weighed these factors differently.

"An appellate court is not authorized to substitute its judgment of the relative weights of aggravating and mitigating factors properly considered by the trial court. [Citations.] . . . 'Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling.' " (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 961.)

13

Because here the trial court duly weighed the relevant factors, Hughey does not demonstrate an abuse of discretion. As described, the court thoroughly reviewed the proper considerations for and against granting the motion. Because reasonable people could disagree as to whether Hughey fell outside the spirit of the Three Strikes law, the court's decision to retain Hughey's prior strike convictions was not so unreasonable as to constitute an abuse of discretion. (See *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1113 [no abuse of discretion denying *Romero* motion despite defendant's age and poor health where "the trial court considered the probation report, records presented by the defense, including [defendant's] health records, and evidence presented at trial" and "noted [defendant's] 'lengthy' and 'fairly consistent' criminal history and found he fell squarely within the three strikes law"]; *People v. Philpot* (2004) 122 Cal.App.4th 893, 906 [same, where "[d]efendant has manifested a persistent inability to conform his conduct to the requirements of the law" and his "past criminal history was extensive and serious," despite that defendant's current offenses were "neither violent nor serious" and his "prior offenses were the result of his drug addiction"].) That the court found Hughey's extensive and violent criminal history to be the weightiest consideration does not establish an abuse of discretion on this record. (Cf. *People v. Mendoza*, *supra*, 74 Cal.App.5th at p. 857 [although trial court referred to criminal history as "controlling" in *Romero* analysis, "this statement can be interpreted as the trial court's identification of the factors it relied on most heavily in conducting the analysis"].)

14

## DISPOSITION

The judgment is affirmed.


MARTINEZ, P. J.

We concur:


SEGAL, J.                        FEUER, J.

15